## FOGARTY vs. THE STATE OF GEORGIA.

1. When a person accused of crime seeks a continuance of his case, he must make the affidavit therefor himself, especially where no reason is shown why he could not do so; it being insisted in this case that the defendant was insane at the time he committed the act, not at the time of trial.

(a) The defendant is the only person who can swear absolutely to the truth of the grounds. While others might testify that the witness has been subpœnaed, and as to the materiality of his testimony, defendant alone can testify whether the witness is absent by his procurement or consent, or that the motion is not made for the purpose of delay only.

2. A motion for continuance based on the ground that the defendant could prove by an absent witness that he had had epileptic fits on divers occasions, was properly overruled, it not being contended that the fact of his having such fits in numerous other instances could not be shown by other witnesses.

3. It was not error to refuse to instruct the jury " that each juror should decide for himself upon his oath what his verdict should be, and that no juror should yield his deliberate conscientious convictions as to what his verdict should be, either at the instance of a fellow-juror or of the majority; and that no juror should yield his honest convictions for the sake of unanimity or to avert the disaster of a mistrial," as the court did charge that "each juror should decide for himself upon his oath as to what his verdict should be." This was sufficient on that subject.

4. This court refuses to review its former rulings upon the subject of the character and degree of mental aberration necessary to relieve a prisoner from the consequences of his acts.

5. It was not error to refuse to charge that "the defence that the prisoner was insane at the time the deed was done must, under the laws of Georgia, be made under the general issue."

(a) What is proper pleading in a case is for the court and not the jury, and it is improper for the court to charge the jury upon that subject.

(b) Where insanity at the time of the trial is insisted upon, it is the proper practice to file a special plea to that effect, and to try such plea by a special jury.

6. It was not error for the court to refuse a request to charge a part only of the definition of manslaughter, a statement of the ingredients which reduce a homicide from murder to manslaughter being omitted from the request.

7. The verdict is sustained by the law and evidence.

8. Where jurors are put upon the court as a trior, and he finds that they are competent, his decision is final and cannot be reviewed here.

(a) Whether he State's counsel has a right to put a juror upon the court as a trior, the juror not having first qualified himself, is not decided, the point not being made in this case; it not appearing that any objection to the juror's being so put upon the court was made when it was done.

9. It is not true that the court had no right to ask jurors on their *voir dire* other questions than those prescribed by the statute, nor does it make any difference whether the questions are propounded by the court before the jurors are put upon him as a trior or not.

(a) The questions propounded in this case were either for the purpose of explaining the nature and meaning of the statutory questions, or to test the understanding which the jurors had of those questions when they made their answers thereto.

10. That a juror has formed and expressed an opinion from rumor or from newspaper reports of the evidence upon a former trial, will not disqualify him, unless that opinion be a fixed opinion and the juror should answer that that opinion would not yield readily to the testimony, or that he could not sit as an impartial juror.

11. That two of the jurors read copies of a newspaper after they had been empanelled, which contained nothing about the case except that it was on trial, was not a good ground for a new trial.

12. Where two jurors were attacked after verdict as not being impartial because of remarks made by them about defendant before the trial, and where one of them stated in his affidavit that his remark was made under a false impression about the defendant, whom he had never known and never seen until the morning of the trial, that his answers on the *voir dire* were true, and that at the time he was accepted as a juror he was perfectly impartial; and the other stated that he did not remember that he had used the words attributed to him, that he had no opinion that would not have readily yielded to the evidence, and that he went into the jury-box with a perfectly impartial mind, etc., both jurors were properly held to be competent. Especially is this true where the affidavits of at least two witnesses, or what is equivalent thereto, are not produced as against the affidavit of the juror.

13. It was within the discretion of the court to allow the State to reopen the case after its counsel had proceeded to make the opening argument. That discretion was not abused in this case.

14. It was not error for the court to refuse to charge that, notwithstanding any recommendation to mercy the jury might think proper to make, the punishment would still require confinement in the penitentiary. The jury having written a note to the judge and inquired whether they could recommend to mercy, he had them brought into court and read them §4656 of the code, which was a substantial compliance with this request, even if it had been proper to have given such a charge.

15. Alleged newly-discovered evidence which was either merely cumulative, or was within the knowledge of the defendant and his family before the verdict, or could have been procured by proper diligence before the verdict, is insufficient to warrant the grant of a new trial.

16. It does not sufficiently appear that, because of public excitement, inflammatory, false and misleading accounts in the newspapers, etc., defendant did not have a fair and impartial trial. No motion for continuance was made on these grounds. Besides, the evidence not only authorized but demanded the verdict.

17. While it is true the defendant may be afflicted with epilepsy, there is no other place for him to receive punishment than the one prescribed in the sentence.

April 9, 1888.

Continuance. Jury and jurors. Insanity. Pleadings. Charge of court. Trior. *Voir dire.* Practice. Newly-discovered evidence. Punishment. Criminal law. Before Judge ADAMS. Chatham superior court. June term, 1887.

Reported in the decision.

GARRARD & MELDRIM and P. J. O'CONNOR, for plaintiff in error.

F. G. DUBIGNON, solicitor-general, for the State.

SIMMONS, Justice.

Fogarty was indicted in the superior court of Chatham county for an assault with intent to murder; to which indictment he pleaded not guilty. On the trial of the case the jury found a verdict of guilty; whereupon he made a motion for a new trial, upon forty-two grounds, which was overruled, and he excepted.

1. The first three grounds may be considered together. The 1st is, that the court held that an affidavit for a continuance should be made by the defendant himself; the 2d ground is, that the court held that when the affidavit for a continuance was made by another person than the de-

fendant, the truth of the facts therein should be shown by other testimony; that the affidavit of itself was insufficient; and the 3d ground is that the court erred in refusing to continue the case on account of the absence of Burns, a witness for the defendant. We think the court was right in all of the three rulings complained of. When a person accused of crime seeks the continuance of his case, and does not wish to be subjected to cross-examination as to the grounds of the continuance, under our view of the law, he must make the affidavit himself. He is the only person who can absolutely swear to the truth of the grounds. While other persons might testify that the witness has been subpœnaed, and as to the materiality of his testimony, the defendant alone can testify as to whether the witness is absent by his procurement or consent, or that the motion is not made for the purpose of delay only. If, therefore, any other person undertakes to swear to these grounds, or to the grounds of the motion generally, we think that counsel for the State has a right to cross-examine him as to the truth of the grounds set out in his affidavit. There is no reason shown in the record why this defendant could not have made this affidavit. No plea was filed by him that he was insane at the time of the trial. The issue insisted on all through the trial, and which nearly all of the defendant's testimony sought to establish, was that he was insane at the time he committed the act—not at the time of the trial.

2. The court also did right in refusing to continue the case on account of the absence of the witness Burns. It was insisted by the defendant that he could prove by Burns that he had epileptic fits on divers and sundry occasions. It was not contended that the fact of his having those fits in numerous other instances could not be established by other witnesses. Indeed, the record shows that numerous witnesses testified as to his epilepsy. The State did not seek to combat this, and did not offer any witnesses to show that the defendant was not afflicted with this dis-

ease.   It was established by the defendant beyond all con-
troversy, by numerous witnesses.   We do not think, there-
fore, that the case should have been continued because of
the absence of one witness who would have testified to
seeing the defendant have fits upon occasions other than
those testified to by other witnesses.   While, generally,
the defendant in a criminal case has the right to select
the witnesses he desires to introduce, he has no right to
continue his case where the issue is not combatted by the
State and he can establish the fact by numerous other
witnesses.   *Griffin vs. The State*, 26 *Ga.* 501.

3. The 4th ground of the motion is, in substance, that
the court refused to instruct the jury " that each juror
should decide for himself, upon his oath, what his verdict
should be, and that no juror should yield his deliberate
conscientious convictions as to what his verdict should be,
either at the instance of a fellow-juror or of the majority;
and that no juror should yield his honest convictions for
the sake of unanimity or to avert the disaster of a mis-
trial."   We think the court's charge was sufficient upon
this question when he charged the jury that " each juror
should decide for himself, upon his oath, as to what his
verdict should be," if indeed he should have instructed the
jury upon that subject at all.   The jurors are supposed to
be intelligent, conscientious men; each takes the oath 'pre-
scribed by law, " that he will give a true verdict according
to the evidence "; and he is presumed to understand the
nature and effect of his obligation.   Whether he can con-
scientiously yield his judgment to that of his fellow-jurors,
is a question he must decide for himself.   The charge re-
quested was a virtual bid for a mistrial; for the effect
would be to impress upon an obstinate juror never to yield
to the argument or reasoning of his fellow-jurors.   The
daily experience of our lives shows that such a charge
would be erroneous.   How often are the fixed and consci-
entious convictions of a sensible man changed by reason
and argument.   How foolish and absurd does a man ap-

pear when he announces that he never changes his opinions or convictions. The man who is willing to change his opinions and convictions upon reason and argument is the really reasonable man. This is so in the ordinary transactions of life; it is true as to courts, it is true as to jurors, and is true as to legislators.

This court, in the case of *Smith vs. The State*, 63 *Ga.* 170, held that " the jury are to act as a body, and should be charged as a body. The individual jurors are not to be addressed in the charge in a way to discourage mental harmony and concert. It is not incumbent upon the court to stimulate their individuality by charging at the prisoner's written request, ' that each juror must be satisfied for himself, from the evidence, of the guilt of the defendant, before he can lawfully agree to a verdict of guilty.' " We do not think, therefore, that the court erred in refusing the request set out in this ground of the motion.

4. The 5th, 6th, 7th, 8th, 10th, 11th, 12th, 13th and 14th grounds are as follows:

" 5th. Because the court erred in refusing to give in charge to the jury the following written request: ' The defendant should be acquitted unless the jury are satisfied beyond a reasonable doubt that the assault was not produced by mental disease.'

" 6th. Because the court erred in refusing to give in charge to the jury the following written request: ' If the defendant commit an assault, knowing it to be wrong, when driven to it by an uncontrollable and irresistible impulse, arising not from natural passion but from an unsound condition of mind, he is not criminally responsible.'

" 7th. Because the court erred in refusing to give in charge to the jury the following written request: ' You must be satisfied beyond a reasonable doubt of the defendant's mental capacity to commit the crime charged.'

" 8th. Because the court erred in refusing to give in charge to the jury the following written request: ' If from the evidence in the case a reasonable doubt arises in your

minds as to the sanity or insanity of the defendant, he is entitled to the benefit of that doubt.'

" 10th. Because the court erred in refusing to give in charge to the jury the following written request: ' Though a total want of responsibility on account of insanity be not shown, yet if the prisoner's mind was so far affected as to render him incapable of a deliberate premeditated assault with intent to murder, he cannot be convicted of assault with intent to murder.'

" 11th. Because the court erred in refusing to give in charge to the jury the following written request: ' If you have any reasonable doubt that he was, at the time of the committing the alleged assault, of sound memory and discretion, it is your duty to give him the benefit of that doubt and acquit him.'

" 12th. Because the court erred in refusing to give in charge to the jury the following written request : ' If you find that the defendant is subject to fits of insanity, he may not inaptly be called an insane man.'

" 13th. Because the court erred in refusing to give in charge to the jury the following written request: ' You may consider the mental and moral condition of the prisoner at the time of the alleged assault, for the purpose of determining whether or not he was capable of forming the deliberate intention unlawfully to take away the life of a fellow-creature. If you find from his condition, or from external circumstances capable of proof, that he was unable to form that deliberate intention, then there can be no express malice ; and if you have a reasonable doubt of the existence of that deliberate intention, you are to give the benefit of that doubt to the prisoner.'

" 14th. Because the court erred in refusing to give in charge to the jury the following written request: ' You cannot imply malice unless you find that no considerable provocation appears, and in addition thereto, that all the circumstances of the assault show an abandoned and malignant heart. If the assault can be attributed by you to

his mental or moral nature, and if you find that his mental and moral condition is the result of epilepsy, then you should attribute it to that, rather than to an abandoned and malignant heart; because if you can give to an act one of two constructions, the one in favor of the prisoner's innocence is the one that ought to be adopted.' "

The able and learned counsel for the plaintiff in error asked leave of this court to review our former rulings on the subject of these requests.    We declined, pending his argument, to allow him to do so, stating that if upon consultation, we saw reason to doubt the soundness of the rulings he sought to review, we would allow him to review them in further argument.   We have carefully considered these rulings, and see no reason to doubt their soundness and wisdom.   We do not think the court erred in refusing to give in charge the foregoing requests.

5. The 9th ground of the motion is, that the court erred in refusing to give in charge to the jury the following written request: " The defence that a prisoner was insane at the time the deed was done, must, under the law of Georgia, be made under the general issue."    As to what is proper pleading in a case is for the court and not for the jury, and it would be improper for the court to charge the jury upon that subject.   Counsel for the plaintiff in error seeks to explain the action of the judge in not giving this request in charge, because of the fact that the case of *Danforth vs. The State*, 75 *Ga.* 614, had not been published at the time of this trial.    We have carefully read that decision, and do not find that any new doctrine on this subject was laid down therein.   So far as we know, it has always been the practice in Georgia, where insanity at the time of the trial was insisted upon, to file a special plea to that effect, and to try such plea by a special jury.   Code, §4299.    See also *Anderson vs. The State*, 42 *Ga.* 9, 10. We do not think anything in the decision in *Danforth vs. The State, supra,* would authorize the judge to give such a request as this in charge.

6. The 15th ground is as follows: "Because the court erred in refusing to give in charge the following written request: 'If you find that there was no malice express or implied, and that the assault was made without any mixture of deliberation whatever, then the act would have been, in the event of death resulting, manslaughter and not murder, and in such cases the prisoner cannot be found guilty of assault with intent to murder, but may be found guilty of the offence of shooting at another not in his own defence or under circumstances of justification.'" In this request, it will be observed, the astute counsel for the defendant in the trial below asked the court to charge a part only of the definition of manslaughter, but left out of his request the ingredients which reduce a homicide from murder to manslaughter. In order to reduce a homicide from murder to manslaughter, the killing must not only be without malice, and without any mixture of deliberation whatever, but "there must be some actual assault upon the person killing, or an attempt by the person killed to commit a serious personal injury on the person killing, or other equivalent circumstances to justify the excitement of passion, and to exclude all idea of deliberation or malice, either express or implied." Code, §4325. If these words had been expressed in the request, no doubt the court would have so instructed the jury if the evidence had authorized it; and we think that as they were not expressed therein, the court did not err in refusing to give the charge as requested.

7. The 16th and 17th grounds are, that the verdict is contrary to law and to the evidence. We have carefully read the evidence as set out in the voluminous record of five hundred pages sent up to this court, and are fully satisfied that the verdict was not only authorized by the evidence, but really demanded by it. In brief, the record discloses that this defendant was prosecuted in the police court of the city of Savannah for disorderly conduct, and after his trial and conviction in that court, he with a com-

panion went to a gunsmith and purchased a pistol and had it loaded, and went up the street to where the prosecutor in the police court resided, and upon meeting him, without a word commenced to fire upon him, and wounded him four times; nor did he cease to fire upon the prosecutor until the loads in his pistol were exhausted.

The defence was, insanity at the time of the shooting. In order to prove this insanity, it was shown that the defendant was afflicted with epilepsy, that he had a great many attacks of this disease, running through a period of three years or more, that he had been under treatment by physicians for this disease, not only in Savannah but in New York, and that some of his family were afflicted with the same disorder; but no witness except one testifies that his mind was so disordered that he did not know that it was wrong to commit this offence, and that he did not know that he deserved punishment for the commission of it. Nearly all the witnesses testified that he was like other boys, except at times when these convulsions were upon him and immediately afterwards; and we think an impartial mind, upon reading the whole testimony, would readily come to the conclusion that even if the court below had given the charges as requested by the defendant's counsel, the jury would be obliged to find the verdict they did find. The charge of the court was able, fair and impartial; the jury in their verdict violated none of the instructions given them by the court in his charge; and we therefore think that these two grounds are without merit.

8. The 18th, 19th, 20th, 21st, 22d, 23d, 24th, 25th and 26th grounds may be considered together. They complain of the action of the court in declaring the jurors mentioned therein competent jurors. Under the rulings of this court, we cannot consider these grounds of the motion. It appears from the record that all these jurors were put upon the court as a trior, and the court found that the jurors were competent. It has been repeatedly ruled by this court

that the decision of the judge as a trior, upon the compe-
tency of jurors, was final and could not be reviewed here.
For these reasons, we decline to pass upon these grounds;
not intimating, however, that the grounds would be suffi-
cient for a new trial if this court could review them.
*Moon vs. The State*, 68 *Ga.* 688; *Williams vs. The State*,
69 *Ga.* 12; *Eberhart vs. The State*, 47 *Ga.* 598; *West-
moreland vs. The State*, 45 *Ga.* 279; *Galloway vs. The
State*, 25 *Ga.* 596.    The question of whether the State's
counsel had a right to put the juror upon the court as a
trior without the juror having first qualified himself, is not
decided, as the point is not made by the plaintiff in error.
The record does not disclose that he made any objection
to the juror's being put upon the court as a trior when it
was done.

9. The 27th, (the 28th ground was not approved by the
judge) 29th, 30th, 31st, 32d, 33d and 34th grounds of the
motion may be considered together.    The error assigned
in these grounds is, that the court had no right to ask the
jurors any other questions upon their *voir dire* than those
prescribed by the statute.    We do not think there is any
merit in these grounds.    Whether the questions were pro-
pounded by the court before the jurors were put upon the
court as a trior or not, does not make any difference, in
our view of the law of the case.    We have carefully read
the questions propounded to the different jurors by the
court, and all the questions propounded were either for
the purpose of explaining the nature and meaning of the
statutory questions, or to test the understanding which the
jurors had of those questions when they made their an-
swers thereto.    We think the judge had a right—indeed
it was his duty, when he observed that a juror did not un-
derstand the meaning of the statutory questions,—to ex-
plain the same to him, or to ask him questions which would
satisfy the court as to whether or not the juror did under-
stand the meaning thereof.

10. We think that the court had a right to explain to

the juror that his answer to the first statutory question need not necessarily be in the affirmative, when he had not seen the crime committed or heard the testimony under oath; and we think that he had a right to explain the meaning of the words "prejudice" and "bias" in the second statutory question, or the words "perfectly impartial" in the third statutory question; or if the offence be a capital offence, he has the right to explain the meaning of the words "capital punishment" in the fourth statutory question. And if in this explanation, he found it necessary to test the understanding or the intelligence of the juror, he had the right to ask the other questions which the court propounded in this case, to-wit, whether his mind would readily yield to the testimony in the case, if the juror had formed and expressed an opinion from rumor or from newspaper reports of the evidence upon a former trial. We do not think that the judge on the trial of a criminal case is a mere figure-head, put upon the bench simply to preserve order or to decide the questions made by counsel in the case. It is his right and his duty to see that the State, as well as defendants, has a fair and impartial jury to try parties charged with violations of the criminal law; and if in the performance of this duty it becomes necessary for him to test the understanding or intelligence of jurors in answering the statutory questions, we will not say that he erred in so doing. The writer's experience on the circuit court bench teaches him that in all criminal trials of importance, there is a disposition among the better class of jurors to avoid jury duty, and that they are frequently willing to avoid this duty by answering that they have formed and expressed an opinion from newspaper reports or from rumor, and thus disqualify themselves from the performance of this responsible duty. This is especially true in capital cases, and upon the trial of accused persons who are influential or who have influential friends. In such cases, it is the duty of the court to explain to the jurors that having formed and expressed an

opinion from newspaper reports or from rumor is not suffi-
cient to disqualify them. To hold that jurors are on this ac-
count disqualified, would in a large majority of criminal
cases exclude the most intelligent and upright citizens from
the jury-box.   Every man who did not desire to serve
upon the jury, or who had business which he considered of
more importance, would read the accounts in the newspa-
pers, or listen to rumor, and then form and express an
opinion in order to disqualify himself from the discharge of
this important service.   Upon this subject, Judge NISBET,
in the case of *Mitchum vs. The State*, 11 *Ga.* 636, says
that " such devices to evade service on the jury are becom-
ing but too frequent, and merit not only censure, but in a
proper case punishment." As to the competency of jurors
who have formed and expressed an opinion from rumor,
see *Westmoreland vs. The State*, 45 *Ga.* 229, and the ca-
ses there cited.   We do not mean, however, to rule that the
court should hold a juror competent who has a *fixed* opin-
ion, although based merely upon newspaper reports or ru-
mor, and who answers that that opinion would not yield
readily to the testimony, or that he could not sit as an im-
partial juror.   In such a case the juror would be incompe-
tent.   We have carefully looked through the examination
of these jurors, as set out in the record, and find that
where the court held jurors to be competent, the jurors, af-
ter the court had made the explanations excepted to, an-
swered the questions in such manner as to render them com-
petent to serve.   We therefore see no error in the matters
complained of in these grounds of the motion.   See
*Henry vs. The State*, 33 *Ga.* 441.

11. The 35th ground complains of improper communi-
cations with the jury after they had been impanelled, in
that two of the jurors, on the morning after they had been
impanelled, were reading copies of the "Savannah Morning
News," a newspaper published in that city.   The record
discloses that the copies of the paper which the jurors
were reading contained nothing about the case except the

fact that the case was on trial. We cannot imagine how this could harm or injure the defendant. There is no suggestion in the record by the plaintiff in error that any harm or injury did occur from that reason. The simple fact that they had in their possession two copies of the paper, does not show to our minds improper communication with them. The court did not err in refusing a new trial upon this ground.

12. The 36th ground is, "that M. G. Helmken and J. S. Evans, two of the jury who tried the case, had formed and expressed an opinion concerning the guilt of the prisoner, and were not perfectly impartial between the State and the accused, but were prejudiced against him, although they had been put upon their *voir dire*." In support of this ground, one Bodell testified, that he heard Helmken, before the trial, say that the defendant " ought to be taken down to the canal bridge at the railroad and hung the same as the nigger." Mr. Dale testified that he had known this witness, Bodell, for a number of years, and had always found him to be an industrious, truthful and honest man. One Monahan testified that he had heard Evans, the juror, say before the trial, that the defendant "ought to be hung, and if I were on his jury I would hang him." The usual affidavits were made by counsel for the defendant, and by the defendant's father, that they did not know of this until after the trial. In reply to this ground of the motion, these two jurors made affidavits. Helmken, in his affidavit, stated that he made the remark attributed to him by Bodell, but said that when he made it he was under the impression that the accused was not Thomas Fogarty, but his elder brother; that he had never known Thomas Fogarty, the defendant, and had never seen him until the morning of the trial; that the defendant's older brother, whom he had before supposed was the accused, had had a difficulty in his store and had drawn a pistol or knife on one of his customers; that his answers upon the *voir dire* were true, that at the time he was accepted as a juror his

mind was perfectly impartial between the State and the accused. Evans, in his affidavit, says that he did not remember that he had used the words attributed to him, though he had frequently stated in conversation that if the reports and rumors which were afloat were true, Fogarty should be convicted; but he says that he had no fixed or other opinion or impression that would not have yielded readily to the evidence or been controlled by it; that his answers to the questions on the *voir dire* were true, and that he went into the jury-box with his mind perfectly impartial between the State and the accused. With regard to Helmken, it is apparent from the evidence disclosed in the record that he was a competent juror. The remark attributed to him was not made about the defendant, but about a different person; he qualified himself on the *voir dire*, and subsequently made an affidavit that his answers on the *voir dire* were true, and that he was an impartial juror. Evans denies the remark attributed to him by Monahan, and further declares that he went into the jury-box with his mind perfectly impartial between the State and the accused. In the case of *Hudgins vs. The State*, 61 *Ga.* 182, this court held that, "after verdict, to disqualify a juror who tried the case and swore that he had not formed and expressed an opinion, and had no bias or prejudice, and was perfectly impartial, there should be the affidavits of at least two witnesses, or what is equivalent thereto, against such oath of the juror, otherwise it is but oath against oath, and the verdict will not be set aside on the ground of the incompetency of the juror." In the case of *Dumas vs. The State*, 63 *Ga.* 600, it was held that " a new trial will not be granted on the ground that one of the jury was not impartial, upon the deposition of one witness who swore to the statement of the juror against the defendant, when the juror denied on oath making the statement, and swore to his perfect impartiality and freedom from any bias." See also, on this subject, *West vs. The State*, 79 *Ga.* 773.

13. The 37th ground complains that the court allowed the State, over objection of defendant's counsel, to reopen the case after the State's counsel had proceeded to make his opening argument. This was a matter within the discretion of the court, and we will not interfere with that discretion unless it has been abused. It was not abused in this case. See *Wiggins vs. The State, post,* 468.

14. The 38th ground complains, in substance, that the court refused to charge the jury that "notwithstanding any recommendation to mercy that they might think proper to make, the punishment would still require confinement in the penitentiary." It appears from the record that the jury wrote a note to the judge and inquired whether they could recommend to mercy or not. The judge caused them to be brought into court, and read them section 4656 of the code; and we think that even if it would have been proper to give such instructions to the jury, the reading of that section was a substantial compliance with the request. That section says: "In all cases where the term of punishment in the penitentiary is discretionary, the court shall determine that punishment, paying due respect to any recommendation which the jury might think proper to make in that regard."

15. The 39th ground is as to newly-discovered evidence. This newly-discovered evidence was an affidavit of Dr. Whitcombe, of New York city, in which he says that he was the sole owner of a remedy for epilepsy as prepared by Dr. Root, that the defendant was for a few years previous a constant purchaser of this remedy, and was under the treatment prescribed in the use of the remedy; and that the result of his observation and experience for a long time had satisfied him that the loss of mental power is a natural and usual result of long continued epilepsy. This evidence, in our opinion, was entirely cumulative. Numerous witnesses testified at the trial that the defendant had had epilepsy for some years; and it was also testified at the trial that the loss of mental power is a natural and

usual result of long continued epilepsy. Besides, if this evidence was material, it was within the knowledge of the defendant and his family, and could have been procured before the trial, or a motion could have been made to continue the case in order to procure the testimony.

The 40th ground is also as to newly-discovered evidence; which evidence consisted in an affidavit of Dr. E. A. Bartlett, of Albany, New York; and he testifies, in substance, that one Thomas Ryan, who was about sixty years of age, had been examined by him, and was suffering from a disease affecting his mind, and in his opinion would never recover; that he was mentally diseased. Mrs. Fogarty also made an affidavit that she is the mother of Thomas Fogarty, and is the sister of Thomas Ryan, of Albany, New York, and that she had been subject all her life to fainting spells, and that her mother, who is dead, was similarly affected. She did not communicate this to counsel for the defendant until after the trial. Mrs. Kelly testifies that she knows Mrs. Fogarty, and has seen her often, and knows she is subject to fainting spells, and that she suffers from great nervousness, and has been so afflicted for many years. Counsel for the defendant make affidavit that they had no knowledge of these facts until after the trial.

We think the court did right in overruling this ground of the motion, for two reasons: (1) It was cumulative in its character. While it is true that no direct question was asked the witnesses about the affliction of Ryan or the defendant's mother, yet questions were propounded to Dr. Waring and Dr. Duncan as to epilepsy being hereditary, these questions evidently showing that the subject was in the mind of the counsel asking them. (2) It does not appear that due diligence was exercised in obtaining this information. The defence in this case was insanity caused by epilepsy. It seems to us that when this defence is set up by counsel so able and experienced as the counsel for the defendant in this case, one of the first questions asked the defendant or his family would be, whether or not his

mother, father, or any of his ancestors were afflicted in like manner. While it is true Mrs. Fogarty, the mother of the defendant, says that she did not know of its materiality, the learned counsel certainly did know of it, and by proper diligence could have ascertained it.

16. The 41st ground is, that the defendant did not have a fair and impartial trial. It is urged by counsel in support of this ground, that the people were excited, that the newspapers had published inflammatory notices, and that the accounts published by them were false and misleading; that editorials had been written calling upon jurors to serve on the jury if summoned, and to do their duty and vindicate the law, etc. In reply to this, we cite the case of *Cox vs. The State*, 64 *Ga.* 403. In that case the court say : " With regard to public excitement and prejudice, we see nothing to take this case out of the general rule long since laid down here authoritatively, to the effect that these have ceased to be cause for a continuance. 24 *Ga.* 297 ; 48 *Ga.* 116 ; 60 *Ga.* 257. It seems quite immaterial that the means of stirring up the excitement and prejudice were inflammatory newspaper articles. Why should the condition of the popular mind be treated as more dangerous to the accused when wrought up against him by the press, than when inflamed to an equal degree by any other agency ? Is the press, as such, to be recognized as a power which can retard the trial of persons accused of crime ? Newspapers are free to publish what they please, so that they keep clear of the law of libel, and if they succeed in impressing the public mind unduly against an alleged criminal, are the courts to wait for the storm they have raised to subside, though the presiding judge should be convinced that there is no real obstacle to obtaining an impartial jury and having a fair trial ?" Besides, as we have said before, the evidence in this record not only authorized but demanded this verdict. In our opinion it was a most outrageous attempt at assassination ; and while we sympathize with the defendant and his family on account of the pun-

ishment which he must undergo, our duty to the State and to the majesty of the law constrains us to pronounce him justly convicted.

17. The 42d ground is, that imprisonment in the penitentiary of Georgia, under its present system, would be to inflict on the defendant, afflicted as he is, cruel and unusual punishment. We do not see any merit in this ground. The law placed it in the discretion of the judge to sentence the defendant to the term of imprisonment imposed in this case, and we cannot undertake to say that this discretion was exercised with undue severity. The people, in their wisdom, through their legislature, have adopted the punitive system as it now exists; and it is not a subject for this court to criticise. While it is true the prisoner may be afflicted with epilepsy, there is no other place for him to receive punishment than the place prescribed in the sentence of the court. The defendant was guilty of a most outrageous and unprovoked violation of the penal laws of the State; and being guilty, he must suffer the consequences of his unbridled passion.

Judgment affirmed.