### 20466. JARRETT *v.* THE STATE.

DECIDED JULY 16, 1930. REHEARING DENIED OCTOBER 2, 1930.

*Wolver M. Smith, Shackelford & Shackelford,* for plaintiff in error.

*Henry H. West, solicitor-general,* contra.

BLOODWORTH, J. ■ In the 1st special ground of the motion for a new trial the court is alleged to have erred in refusing to continue the case. While sitting in the courtroom, and, so far as the record shows, suffering from no disability whatever, the defendant offered his sister, Miss Mozelle Jarrett, as a witness to establish the grounds of his motion for a continuance. No reason is shown by the record why the defendant could not have been offered as a witness on this motion. In *Fogarty* v. *State,* 80 *Ga.* 450 (5 S. E. 782), it was ruled as follows: "When a person accused of crime seeks a continuance of his case, he must make the affidavit therefor himself, especially where no reason is shown why he could not do so; it being insisted in this case that the defendant was insane at the time he committed the act, not at the time of trial." In that case a conclusive reason was given why the defendant himself should testify on the motion to continue. It was said: "The defendant is the only person who can swear absolutely to the truth of the grounds. While others might testify that the witness has been subpoenaed, and as to the materiality of his testimony, defendant alone can testify whether the witness is absent by his procurement or consent, or that the motion is not made for the purpose of delay only." Under the principle just announced and the facts as shown on the motion to continue, the judge did not abuse his discretion in overruling the motion.

■ In special grounds 2, 3, 4, and 5 of the motion the court is alleged to have erred in rejecting certain testimony. The court properly ruled out testimony of Mrs. Annie Flournoy as to "any conversation between her and Moorehead." Counsel for plaintiff in error stated that he expected to prove by the witness that when she told Moorehead that Fred Flournoy was drinking and must not go out, Moorehead said: "Let me take him up town and walk him off this drunk." None of this excluded testimony was admissible.

The court is alleged to have erred in excluding the following testimony of Fred Flournoy: "On Friday he [Felix Moorehead] called me over there and proposed that I should go in with him in robbing some safe of $2000." This testimony is too general, uncertain, and indefinite to be admissible. "Some safe." Whose safe? Where located?

The court is alleged to have erred in refusing to allow Mrs. Ada Fowler to testify that on the night the Palace Theater was entered,

and very shortly before that, Paul and Johnny Jarrett were intoxicated. For no reason stated was the exclusion of this testimony error. The court is also alleged to have erred in ruling out the answer of Paul Klein when he was asked, "What was their [Paul Jarrett's and Johnny Jarrett's] condition as to drunkenness or sobriety?" When and where had they been drinking? This ground does not show. The court did, however, rule, "You are allowed to show if they were drunk to the extent of unconsciousness." No effort was made to show this. The mere fact that the boys "had been drinking" was properly ruled out.

■ Neither ground 6, nor 7, nor 8 of the motion for a new trial is unqualifiedly approved by the presiding judge, and, under numerous decisions of the Supreme Court and of this court, we are not called upon to consider these grounds. In *Brice* v. *State*, 117 *Ga.* 466 (43 S. E. 715), it was held: "The grounds of a motion for a new trial must be approved by the judge; and if the certificate appended thereto states facts in conflict with the statements in the motion, or leaves it uncertain as to whether the facts therein alleged actually occurred, the assignment of error can not be considered by this court. *Fletcher* v. *Collins*, 111 *Ga.* 253 [36 S. E. 646]." In *Landrum* v. *Landrum*, 145 *Ga.* 307 (2) (89 S. E. 201), it was held: "Where a motion for a new trial contains exceptions to certain alleged charges of the court, it is the duty of the judge to either approve or disapprove the grounds containing such recited charges, and not to approve them in a conditional manner, so as to require the Supreme Court to examine the entire charge to ascertain whether the charges set out in the grounds of the motion are correctly stated or not." See also subdivsions *a* and *b* of the same division of that decision (p. 308). In *Louisville & Nashville Railroad Co.* v. *Ogles*, 146 *Ga.* 21 (83 S. E. 681), Justice Beck said: "Where a ground of a motion for a new trial complaining of the admission of testimony is not certified to be true, but it is certified as being true when all the facts stated in that ground are 'taken in connection with all of the other testimony of the witness as set out in the brief,' it will not be considered by this court; as a ground of a motion for a new trial must be complete within itself, and this court will not undertake to go through the record to ascertain what other evidence must be taken in connection with that set out in the ground of the motion, in order

that the court may ascertain whether the evidence objected to should have been admitted or excluded. The practice of making such a certificate has been criticized in more than one opinion rendered by this court. If the recital of fact in a ground of a motion is true, the court should certify it without qualification; if it is not true, counsel should be required to make correction in accordance with the truth, or the court should refuse to certify altogether." See *Burdette* v. *Crawford*, 125 *Ga.* 577 (3), 578 (54 S. E. 677); *Mims* v. *Mims*, 151 *Ga.* 330, 331 (106 S. E. 279); *Hammond* v. *Stale*, 34 *Ga. App.* 234 (128 S. E. 918), and cit.; *Collier* v. *Moore*, 31 *Ga. App.* 227 (8) (120 S. E. 441). Even if these special grounds of the motion are not subject to the rule laid down, none of them show reversible error.

■ Grounds 9, 10, 11, and 12 of the motion for a new trial allege that the court erred in rejecting evidence. The testimony referred to in ground 9 was that of Hughes Hilliard, which related to a conversation between the witness and Moorehead. The court announced: "I will rule out all conversations between Moorehead after the occurrence complained of with outside parties." In ground 10 the court is alleged to have erred in ruling out testimony of Miss Mozelle Jarrett as to a conversation between her and Moorehead. The witness was asked if Moorehead told her where he bought the fuse and other things used in this case. The court announced: "I will rule out everything that Moorehead said." In ground 11 it is stated that the witness, Miss Jarrett, was asked by counsel for the movant: "On Sunday morning did you see this boy Moorehead or hear anything from him?" The court announced: "I rule out any talk over the phone on Sunday morning with Moorehead." In ground 12 it is stated that counsel for the movant, when examining the witness, Miss Jarrett, said: "I want to figure out how he got little Johnnie out of the house." The court announced: "I rule out anything about little Johnnie unless you put him up as a witness. We are not trying him." The court did not err in ruling out any of the evidence to the exclusion of which objections were made in grounds 9, 10, 11, and 12.

■ The indictment in this case is based upon section 183(a) of Park's Annotated Penal Code, and specifically charges Paul Jarrett with the offense of felony, for that on the 8th day of February, 1929, in the county of Clarke, he "unlawfully and with

force and arms did have in his possession six dynamite caps, two feet of blasting fuse, one medicine dropper, and a bottle containing nitroglycerine extract, said articles being commonly used for the commission of safe-cracking, said articles as aforesaid being then and there had with the intent to use and employ the same in the commission of a crime." The material allegations in this indictment, necessary to be proved, are that the crime was committed in the county of Clarke, within four years immediately prior to the finding of the indictment, that the accused had in his possession the articles named, or some of them, and that the articles found in his possession were such as were commonly used for safe-cracking, and were had with the intent to use and employ the same in the commission of a crime. The State insists that the crime that the accused intended to commit was the blowing of the safe of the Palace Theater, and the accused was arrested just as he went over to this safe, patted it, and said, "Here is the baby here," and from his pockets were taken the articles named in the indictment, and in addition a razor blade, a bar of soap, and a pair of gloves from his hand. It was proved that the articles named in the indictment and found on the person of the accused were commonly used for safe-cracking. The foregoing seems to show a complete case. However, the accused sought to relieve himself of the burden placed upon him by proof of the guilty possession of these articles, by saying in his statement at the trial that Moorehead had preceded him in the theatre, and "a few minutes later I came in and Moorehead handed me the gloves when I walked in the door and went up the aisle Moorehead put something in my pocket. I thought it was a flashlight. . . If there was anything found in my pocket, I did not know a thing about it." That the accused was aware of the presence of the articles in his pocket and of their nature is shown by the remark made to Detective Seagrave and Officer Cornelison when the bottle was taken from his pocket, "For God's sake don't drop that; if you do, we are all gone." That the accused knew the character of the enterprise is shown by his remark to officer Cornelison that "he did not care what they done with him; all he hated was that he got his younger brother into it;" and by the fact that when he was arrested he had on gloves, the evident purpose of wearing them being to hide his finger-prints.

It is the special prerogative of the jury to settle all disputed issues

of fact. They have heard this case, settled the question of intent, and determined that the accused was guilty; the presiding judge approved their verdict, and this court will not interfere with it.

*Judgment affirmed. Broyles, C. J., and Luke, J., concur.*