### LATHROP *et al. v.* ADKISSON.

1. The amendment did not introduce a new cause of action; nor was it improper because one of the defendants resided in another county; nor did it render necessary the making of other parties defendant.
2. An agreed synopsis of the evidence of a deceased witness, together with the stenographer's report in full of said evidence, was not objectionable on either of the two grounds presented.
3. A nonsuit was properly denied.
4. Heirs at law of a deceased partner take no better title on division of the assets than the partner himself or the partnership had.

5. No special rule of evidence with respect to force and clearness is applicable to the facts of this case.

6. Where an agreement is relevant merely as evidence of intention, it matters not whether one of the parties was legally competent to represent a third person in making it or not.

7. The charge requested in the fifth subdivision of the fourth ground of the motion was properly refused.

8. According to the decision of this court on the former writ of error, the charge set forth in the seventh ground of the motion was correct.

9. The verdict was warranted by the evidence, and not contrary to law.

10. The defendants' not having severed in their defence as to mesne profits, and there being nothing in the record to show that the question as to what each severally was liable for was presented to or passed upon by the court below, the question as to such several liability is not for adjudication by this court.

July 8, 1891. By two Justices. Argued at the last term.

Amendment. Evidence. Nonsuit. Partnership. Title. Charge of court. Verdict. Practice. Before Judge MILLER. Houston superior court. April term, 1890.

Reported in the decision.

W. L. GRICE, for plaintiffs in error.

HARDEMAN, DAVIS & TURNER, *contra.*

SIMMONS, Justice.

The pleadings and evidence in this case, with the exception of an amendment to the pleadings hereinafter noticed, will be found reported in the case of *Lathrop* v. *White*, 81 *Ga.* 29. The judgment was then reversed, and the theory made by the evidence which had not been submitted to the jury was directed to be submitted to them on the next trial. To meet this suggestion or direction, when the case came on for a second trial in the superior court, the plaintiff offered an amendment to her declaration, alleging, in substance, that her guardian, George H. White, had died pending the suit; that her father, W. T. White, having become indebted to Lathrop & Co., moved to Louisiana without having paid

the debt, and there died; that after his death, George H. White, her guardian, made an arrangement with Lathrop & Co. that the rents, issues and profits of the land should go to Lathrop & Co. until said indebtedness of W. T. White was paid; and that under said arrangement, White the guardian paid out of the rents, issues and profits of said land $735, up to and including the year 1879; that during that time said guardian remained in possession of the land, paying taxes on it; that in the year 1879 said guardian removed from Houston county to Pulaski county; that he rented the land to Parker before removing, having appointed Houser to collect the rents and turn them over to Lathrop & Co.; that in that way Houser got possession of the land and collected and paid sums aggregating $1,806.50 for the years 1880 to 1887, inclusive; that said sums largely overpaid the indebtedness due to Lathrop & Co.; that the plaintiff was entitled to recover said lands and "the rents thereof for four years prior to the bringing of said suit, and reasonable rents during said time"; that she had attained her majority since the filing of the suit; and she prayed that the suit might proceed in her own name.    To this amendment the defendants objected, (1) because it introduced a new cause of action; (2) that Mrs. Lathrop was the only real claimant to the land, and that she lived in Chatham and not in Houston county where the suit was pending; and (3) that Lathrop & Co., through their surviving partner, Warren, should be made a party defendant.    All of said objections were overruled and the amendment was allowed.

1. There was no error in allowing this amendment. It did not introduce a new cause of action.    The evidence on the former trial made the same questions that the amendment now makes, and it was upon this evidence that the direction was given in the former case that the question should be submitted to the jury.    The

allegations in the amendment were therefore made to correspond to the proof in the case. Nor was it improper to allow the amendment because the real defendant resided in a different county. She had been made a party in the original declaration and was properly served, and had appeared and pleaded, and the court thereby obtained jurisdiction of her person. This having been done, any proper amendment could be made to the declaration, although she resided out of the county where the suit was pending. She was the real claimant of the land, and the other defendants named in the original declaration were the tenants in possession. The action was complaint, seeking to recover the land and mesne profits. It was therefore unnecessary to make Lathrop & Co., or the surviving partner, parties to the action. If there were equities between Mrs. Lathrop and the partnership, or the surviving partner, the plaintiff in this action was not interested therein, and these equities would be determined between them in another action, to which this plaintiff would not be a necessary party.

2. When this case was brought here before, counsel for both sides agreed on a brief of evidence, which was approved by the court. In making this agreement they took the report as written out by the official stenographer and struck therefrom the questions and other irrelevant matter, and filed in the clerk's office the brief thus agreed upon and approved. On the second trial, George H. White, the guardian, having died, his testimony on the former trial, which had been agreed upon in the brief of evidence and approved, was offered by the plaintiff. The defendant objected to the testimony being read, because under the amendment which was allowed, the issues were not substantially the same as on the former trial, and because the brief as offered showed that it did not contain the whole of White's

testimony, much of what purported to be his testimony having been expunged and otherwise altered before approval. When this objection was made, counsel for the plaintiff offered the whole of White's testimony as it appeared in the stenographer's report before the alterations were made, and the court admitted it over objection. The court did right in overruling the objections. The amendment allowed, as before remarked, did not change the issues in the case. They were substantially the same, and the parties to the action were the same. Code, §3782. We think the testimony of this witness in the brief of evidence agreed upon on the former trial was admissible by itself. The defendants and their counsel brought the case here when their motion for a new trial was overruled, and their counsel must have made out the brief of evidence. He was not likely to put anything in the brief that was not true, or to leave out anything that would illustrate the issues in the case; and when both counsel agree to a brief of the evidence and it is approved by the court, testimony of a witness since deceased or inaccessible, contained therein, is admissible. *Adair* v. *Adair*, 39 *Ga.* 75; *Smith* v. *State*, 28 *Ga.* 23. In the case last cited it is said: "The test surely ought to be no more than this: is it probable that the admission admits only what is true, that the judgment (of approval) sanctions only what is true? For the truth is all that justice requires. And taking this as the test, the paper in question would, it is certain, be admissible. Is it likely that the parties agreed to anything as proved that was not proved, even though the only purpose of this agreement was to comply with the requisitions of the law as to new trials, and the law as to writs of error? Is it likely that the court would have approved as true anything that was not true, even though the purpose of the approval was merely to comply with the requisitions of these same

laws? Certainly it is not. Surely all will agree that a paper thus agreed to by the parties and approved by the court, will be more trustworthy on the question what was the evidence delivered on the trial, than the daily fading recollection of persons who happened to hear the evidence when it was so delivered." Of course, if there was anything material of the deceased witness's testimony left out of the agreed brief by mistake or inadvertence, or because at that time it was not deemed material, it could be supplied by either party; and this was done when the court allowed the whole testimony of the deceased witness as taken down by the stenographer to be read to the jury.

3. At the conclusion of the testimony of the plaintiff, the defendant moved for a nonsuit, and the motion was overruled by the court. The court did not err in refusing to grant the motion. There was sufficient evidence to authorize him to submit it to the jury.

4. Counsel for the defendant in error requested the court to charge as follows: "If you believe that upon the death of J. W. Lathrop, Sr. and Jr., and the dissolution of the parnership of J. W. Lathrop & Co., the effects of the late firm were divided out by agreement among the heirs at law and the surviving partner, and that in this division one third fell to Mrs. M. A. Lathrop, and she took this land as part of her share, and took a conveyance for it from the other parties, and in consideration of what she got in this division she gave up to the other two parties her interest in the other assets about whose title there was no dispute, this made her a *bona fide* purchaser for value, and if this division took place after the alleged arrangement between Geo. H. White and J. W. Lathrop & Co. referred to in the amendment, her right to this land could not be affected by such an arrangement unless she had notice of it, and the burden of proof is on the plaintiff to show that

she had such notice." If all the facts set out in this request were true, the court should not have given it in charge to the jury. The main question in issue between the parties on this trial was, to whom did the land belong? In whom was the legal title? If, therefore, Mrs. Lathrop had no legal title to the land, it was immaterial and irrelevant in what manner she procured the title under which she claimed. If Lathrop & Co. had no title to the land, and she procured the title under which she claimed by the division of the assets of the firm, she got no better title than the firm had. Nor did she get any better title than her deceased husband would have had if the assets had been divided during his life; and if in taking this land as part of her portion of the assets of the firm and of her deceased husband, she gave up other assets about the title of which there was no dispute, the interest of the plaintiff in the court below should not be affected thereby; nor would these facts make Mrs. Lathrop a *bona fide* purchaser so far as the rights of Mrs. Adkisson, the plaintiff, were concerned. Both parties stood in relation to each other upon their respective titles. If Mrs. Lathrop had the legal title, she would have been entitled to retain the land; if she did not have the legal title and the plaintiff did, the plaintiff would be entitled to recover the whole land, and not merely one third, as the court was requested to charge in the second subdivision of the request.

5. The court was also requested to charge that "when an attempt is made to set up a parol agreement concerning land, like the one referred to in the amendment, the proof of the agreement should be clear and satisfactory." Under the facts of this case, no special rule of evidence with respect to force and clearness was applicable. The agreement set up in the amendment was not concerning the title to land, but was only as to how the rents should be disposed of.

6. The court was requested to charge as follows: "If George H. White was not at that time guardian, and had no interest in this land, he had no right to bind anybody by any such agreement, and it could not be enforced even if proved." "If Lathrop & Co. received from Boon a transfer of the bond for titles, and Boon was not a party to the agreement referred to in the amendment, but the agreement was made between George White and Lathrop & Co., and no money or other thing of value was paid or expected to be paid to Lathrop & Co., and no improvements were made or to be made by George White or the plaintiff, and the agreement was simply that Lathrop & Co. should have the use or rents of the land till the debt due them by W. T. White was paid in rents, such an agreement, if made, was a *nudum pactum*, and cannot be enforced."

In the former decision of this case, on the question of this contract or agreement, this court said: "White, the guardian, however, contends that Lathrop & Co. never went into possession of this land. He claims that when Boon surrendered the possession, he surrendered it to him, and that he and Warren, one of the partners of Lathrop & Co., made a verbal contract, whereby it was agreed that White should take the land and rent it and pay the debt of his brother, and when that was done, the land should belong to his ward. This Warren denies. The court below seemed to take a different view of the case from what we have taken, and failed to submit this matter to the jury. We think that if White made this contract with Warren that he was to take the land and rent it and pay the debt of his brother, and after the debt was paid the land was to go to his ward and niece, then if the debt was paid she would be entitled to it. But if there was no such contract as that made, and Warren only gave him twelve months in which to redeem the land, and he failed to redeem it,

then of course she cannot recover. This is a matter entirely for the jury as to which theory they will adopt after hearing the evidence. If the case should be tried again in the court below, we presume that the court will submit this matter to the jury, under proper instructions." According to this ruling, the trial judge submitted the question to the jury, and by their verdict they must have found that White's theory was true. The request recited above was that the court should charge that if White's testimony was true, White was not authorized to make such an agreement and it could not be enforced, and was a *nudum pactum.* We still think if such an agreement was made by White with Warren, one of the firm of Lathrop & Co., the plaintiff would be entitled to recover. It does not matter, under the facts of the case, whether White had authority to make the agreement or not, or whether the agreement by itself could be enforced in a court of law ; the great and controlling fact which the agreement demonstrates is the intention of Warren as to the capacity in which the firm would hold the land. If White's testimony is true—and the jury has so found,—Warren never intended to assert title to the land. He only intended to hold it under the bond for titles of Boon until the debt due his firm was paid from the rents. Other facts in the case tend to confirm the testimony of White. A very important fact was that several years after the contract was made with Boon, and the agreement with George White, Lathrop & Co. sent George White a statement of the balance due on the deceased White's account. This shows that Lathrop & Co. did not consider their debt against W. T. White paid by their surrender of the notes and judgment against Boon. W. T. White, the father of the plaintiff, being thus indebted to Warren's firm, and having given it the two notes of Boon for $500 each for the balance of the un-

paid purchase money, as collateral security for his debt to the firm, the firm sued Boon on the notes and obtained judgment. Whereupon Boon agreed with the firm to surrender the land to it, and the firm agreed to cancel his notes. He transferred his bond for titles to the firm of Lathrop & Co. Lathrop & Co. did not pay a dollar of their own money to Boon or to White for the land. All they paid Boon for the land was the assets which they had received from W. T. White, their debtor, as collateral security. When they cancelled their notes and the judgment thereon against Boon, and he agreed to surrender the land, and transferred his bond for titles, it did not amount to placing the title to the land in Lathrop & Co., but was only an exchange of collaterals. Lathrop & Co. gave up their notes and judgment, and took in lieu thereof the land as collateral. The agreement with Boon did not pass the title, because the title was still in W. T. White, or in the plaintiff as his sole heir at law, he being dead. When a pledgee with whom collaterals have been placed as security for an antecedent debt changes the character of collaterals upon a note or mortgage to land or other property without the consent of the pledgor, it does not amount to a payment of the debt, but the pledgee holds the new collateral upon the same terms and conditions as he held the old. And while the new collateral is thus held by the pledgee, if any rents or profits are made by him he must account therefor to the pledgor; and if the rents or profits are sufficient to pay the debt, the debt becomes cancelled, and the pledgor is entitled to recover the collateral. Colebrooke Collateral Securities, §§182–3; Jones Pledges, §§659–60; Story Bailments, §343; Brown *v.* Tyler, 8 Gray, 139; Montaigne *v.* Boston Railroad, 124 Mass. 242; Dalton *v.* Smith, 86 N. Y. 176–183; Depuy *v.* Clark, 12 Ind. 427; Gage *v.* Punchard, 6 Daly, 229; Hoyt *v.* Martense,

16 N. Y. 231; Diller v. Brubaker, 91 Am. Dec. 177; Richardson v. Mann, 30 La. Ann. 1060; Conyngham's Appeal, 57 Pa. St. 474.

As before remarked, Lathrop & Co. did not obtain the title to this land, because at the time the contract between them and Boon was made, W. T. White was dead, and the title never having passed from him was in his estate. Nor did he or his legal representative agree to the change of the collateral to be made by Lathrop & Co. The agreement shows that according to the real intention of the firm as expressed by Warren at the time, this holding was to be in conformity with the general rule of law applicable to such a case, and was not treated as an adverse holding to the estate of W. T. White. For these reasons the court did not err in refusing to give the requests above copied.

7. The court charged the rule as laid down by this court in that part of the opinion above quoted, to which charge the defendant excepted, making it the 7th ground of his motion for a new trial. There was no error in giving this charge.

8. The verdict was warranted by the evidence.

9. It was claimed by counsel for the plaintiff in error that that verdict was contrary to law "for the reason that mesne profits were found not only against Mrs. Lathrop, the owner of the land, but also against Houser, the agent, and against the tenants, all of whom were moving for a new trial; that some of these tenants did not rent the place for more than two or three years, and all of them paid a stipulated rent to Houser, who forwarded it to Lathrop & Co.; that Houser was the agent to collect these rents, and having done this, as both parties admit, the tenants were discharged from any further liability." Upon the trial of the case the tenants did not sever in their defence as to the mesne profits. The record does not show that any question

was made or presented to the court as to what each was severally liable for; nor did the court pass upon the question. It not having been made before the trial judge and ruled upon by him, it is not for adjudication here.                    *Judgment affirmed.*