25246. INTERNATIONAL AGRICULTURAL CORPORA-
TION *v.* WALTERS.

708

*Joe A. Brown, Little, Powell, Reid & Goldstein, James H. Therrell,* for plaintiff.

*Wheeler & Kenyon,* for defendant.

GUERRY, J. International Agricultural Corporation brought suit against B. N. Walters on two notes due in 1929, and three notes due in 1930, for amounts named therein. The defendant in his plea admitted the execution of the notes, but denied liability for any amount except $132.85. He further answered that he represented the plaintiff in the sale of guano under an agency contract by which he would sell the plaintiff's guano to approved customers, taking their notes payable to himself and giving his own notes to the plaintiff for the guano sold, and putting up the purchaser's notes with the plaintiff as collateral for his note. This arrangement continued during 1929 and 1930. He further alleged that on 1929 business he turned over to the plaintiff 30 bales of cotton in full settlement of 1929 notes; that in January, 1931, the plaintiff took from M. B. Crawford (a purchaser of guano) a second mortgage on his farm in settlement of Crawford's note, and that no credit had been given to the defendant for the amount of the Crawford note, to wit, $231.83; that the defendant held notes against J. C. Sheriff for the principal sum of $897.02, plus $178.56 interest, and the plaintiff took these notes out of the defendant's hands and sued on them to judgment, thus relieving the defendant of responsibility as to these notes, and entitling him to credit therefor.

The jury returned a verdict sustaining the defendant's plea.

Was this verdict supported by the evidence? It appears that in addition to the notes sued on, due in 1929, the defendant owed the plaintiff a balance on two other notes. These four notes aggregated over $1800. The defendant testified: "I was agent for the I. A. C. in selling guano in counties in this section in 1929 and 1930. The arrangements under which I made my contract for the sale of guano are all practically the same. Where I sell guano on credit I take the farmer's note and then turn that over to the I. A. C. as collateral against my notes. I sold anybody I wanted to sell, and gave my note to the I. A. C., and put them up as collateral on my notes I received from the farmer. In 1929 I owed the I. A. C. about the end of the cotton season about $1400. We had a lot of cotton down there that I took in from the farmers at 17 cents, and when I put the cotton up with the I. A. C. the market had dropped to about 14 cents, and the agreement was that these thirty bales of cotton would satisfy the 1929 balance. I had that agreement with Mr. Joe A. Brown and Lewis Stark who was the division sales manager, and Tom Flake who was their local salesman, and it was agreed that they would take the cotton to satisfy the 1929 balance, and I turned the cotton over to them, thirty bales, 14,617 pounds. That was accepted by them in settlement of the 1929 indebtedness." However, on cross-examination in reference to these 1929 notes, the defendant testified: "I owed them about $1400, 1929 notes. The thirty bales of cotton were worth at that time, at the time I delivered it, about $1700 or $1800. I did not give them that much in settlement of a $1400 debt. I bought the cotton at 17 cents, and the market had broken down to about 14 cents, and we discussed it between me and Mr. Brown and Mr. Stark, and they agreed to hold this cotton—to hold it for me, and I delivered the cotton in December, 1929. I asked them would that satisfy my 1929 account, because I wanted to hold it and let me get my profit out of it. If we had sold it then, it would have overpaid the note. As to why I did not get my note back when I made that trade—they also held some others I paid and did not get until a year or two later. I did not ask for them." In June, 1932, the defendant wrote to the plaintiff, listing the notes, and saying: "This will be your authority to sell when you see fit to do so, the cotton which you hold as collateral to the above-listed notes." On February 5, 1931, the

defendant wrote Mr. Brown, of the plaintiff company, as follows: "By paying some difference I can trade the thirty bales off-grade for 100 bales good cotton put on call with Anderson Clayton Co., Atlanta, Ga. 7 cents per pound has been advanced on this cotton. This leaves an equity of 3 cents per pound. This carries no storage nor insurance charges. If you had just as soon hold the 100 bales, I will make the trade. Let me know about the matter." On January 22, 1930, the defendant wrote Mr. Brown as follows: "Since you have nearly enough cotton to cover what I owe you, I would like to get my land note. May need it to get things going this season; and I will arrange some way to pay you balance, if any, when cotton is sold."

The defendant's testimony on direct examination, without more, would sustain the plea. However, the evidence on cross-examination and the letters written by the defendant show conclusively that he had not turned the cotton over to the plaintiff in full settlement of the debt, but to be held as collateral. If the cotton was to be held as collateral for the 1929 indebtedness, it could not be an accord and satisfaction which would amount to payment. The evidence for the plaintiff shows that when the cotton was sold, under authority given to it in June, 1932, two of the 1929 notes were paid, and the rest of the proceeds of the sale of the cotton was credited on one of the 1929 notes. In reference to the Crawford transaction, the defendant testified that Crawford could not pay his note, and that the defendant and Mr. Brown went to see Crawford, and he agreed to give I. A. C. a second mortgage on his farm to satisfy this original note. The I. A. C. "took a second mortgage on Mr. Crawford's farm and made it payable direct to I. A. C., and took the matter entirely out of my hands. The deed was made payable to the I. A. C." Mr. Brown testified: "As to the Crawford note, where a second mortgage was taken, I went to see Mr. Walters to assist him in collecting some of these notes, and we went to see Mr. Crawford. At that time the notes were in Mr. Walters's hands for collection; and Mr. Crawford was cutting some timber near the house, and we asked him about payment of the note, and he said he couldn't pay anything but would be glad to give security, and he said he would give us a security deed on part of his land, and Mr. Walters said that would be all right; and after taking the note and the deed to secure debt, the note

was then turned back to Mr. Walters for collection, and he has it now for collection. I did not then or ever agree with Mr. Walters to take that note off his hands and give him credit for it on his note, or take it in settlement of that much of his debt. I have talked with Mr. Walters about collections on uncollected notes since that time, and as far as I know it is still unpaid and uncollected. Mr. Walters has the note now. He made no objection to my taking the second mortgage at that time. He made no objection to the manner in which it was payable." The fact that the plaintiff's agent, in company with the defendant, procured from Crawford additional security payable to itself, does not ipso facto relieve the defendant from liability or amount to an accord and satisfaction. The entire evidence of the defendant on this point is set out above. The use of the expression, "and took the matter entirely out of my hands," is not sufficient to show that the plaintiff had relieved the defendant of any further liability on his note. There is no denial on the defendant's part of the plaintiff's evidence that the note of Crawford was turned back to him for collection and is now in his possession, or that he made no objection to the taking of the second mortgage by the plaintiff. It is not pleaded or contended that the defendant's risk was increased and that he was thus discharged. In *Lathrop* v. *Adkisson,* 87 *Ga.* 339, 348 (13 S. E. 517), it was said: "When a pledgee with whom collaterals have been placed as security for an antecedent debt changes the character of collaterals upon a note or mortgage to land or other property without the consent of the pledgor, it does not amount to a payment of the debt, but the pledgee holds the new collateral upon the same terms and conditions as he held the old."

Considering the evidence as a whole, the defendant failed to sustain his defense, and the court erred in overruling the plaintiff's motion for new trial. The special grounds of the motion are sufficiently covered by the foregoing discussion.

*Judgment reversed. Broyles, C. J., and MacIntyre, J., concur.*