| 79 | 773 |
| 93 | 203 |

## West *vs.* The State of Georgia.

1. The evidence is sufficient to sustain the verdict, and the court below being satisfied with it, this court will not interfere.
2. Since the act of 1875, (acts 1875, p. 106,) a recommendation to mercy in capital cases of murder is equivalent to a recommendation to imprisonment for life, and a verdict recommending the defendant to mercy is not illegal.

(*a*) This provision of the act of 1875 is still of force, though omitted from the code of 1882 and the *addenda* thereto; nor was it repealed by the act of 1878, which allows a recommendation by the jury in capital cases, whether the evidence is merely circumstantial or not.

(*b*) As the law now stands, this case is not controlled by those in 35 *Ga.* 5; 48 *Id.* 119, and 49 *Id.* 451.

3. In order to aid the solicitor-general, the court allowed the stenographer to propound the questions to the jurors when put upon their *voire dire*, the solicitor-general accepting or rejecting them as they were put upon the State. When one of the jurors had qualified himself as such, the stenographer inadvertently, and without waiting for the solicitor-general, put the juror upon the prisoner, and he was immediately accepted by the latter. At or about the same time, the solicitor-general rejected the juror, and announced that it was not the duty of the stenographer to accept the juror for the State, but simply to propound the statutory questions. The court thereupon held that the juror had not been accepted by the State, and allowed the solicitor-general to challenge him:

*Held,* that this was not error.

4. Where one ground of a motion for a new trial was, because one of the jurors rendering the verdict and acting as foreman of the panel had, previously to the trial, formed and expressed the opinion that the defendant was guilty of murder and should be hung, the affidavit of a witness, to the effect that the juror stated before the trial that he thought the defendant ought to be hung, will not outweigh the sworn answer of the juror on his *voire dire*, that he was impartial and had no bias or prejudice against the defendant, especially so, where this ground of the motion for new trial was added after the death of the juror, and the presiding judge stated that he was well acquainted with the juror, who was a man of high character, and in the opinion of the judge, would not have served on the jury if he had been biased or prejudiced against the prisoner.

(*a*) To disqualify one from being a juror in a criminal case, he must have formed and expressed an opinion, either from having seen the crime committed or from having heard the testimony under oath. A man may form and express an opinion from rumor or from newspaper reports, and yet be a qualified and competent juror, if the opinion has not become fixed and determined.

November 12, 1887.

Criminal Law. Verdict. Code. Laws. Practice in Superior Court. Jury and Jurors. Before Judge RONEY. McDuffie Superior Court. March Term, 1887.

Reported in the decision.

THOS. E. WATSON; JOHN T. WEST, for plaintiff in error.

CLIFFORD ANDERSON, attorney-general, by brief; BOYKIN WRIGHT, solicitor-general, for the State.

SIMMONS, Justice.

The plaintiff in error was tried in McDuffie superior court for the offence of murder, and the jury returned a verdict of guilty with a recommendation to mercy. A motion for a new trial was made upon the grounds (1) that the verdict was contrary to the evidence; (2) that the verdict was decidedly against the weight of evidence; (3) that the verdict was contrary to law; (4) that the court, after a juror, W. J. Paschal, had been put upon the defendant by the State, and accepted as a juror by the defendant, allowed the State to withdraw its acceptance of said juror, and have his name stricken from the list of accepted jurors, and refused to allow the defendant to retain said W. J. Paschal as a juror to try said case, said juror not having been shown incompetent.

When the motion came on to be heard, the plaintiff in error amended his motion and added the 5th ground, as follows: " Because of the disqualification of the foreman of the jury which tried him, for that Huriah Reese, one of the jurors rendering said verdict and acting as foreman of the panel, had previously to the trial formed and expressed the opinion that movant was guilty of murder, and should be hung; which state of facts was unknown to movant and his counsel until after the said trial."

1. There was no error in the court's overruling the motion on the first and second grounds. The evidence is sufficient to sustain the verdict, and the court below being satisfied with the verdict, we will not interfere with it on those grounds.

2. The next ground of exception is, that the jury found a verdict of guilty and recommended the prisoner to the

mercy of the court, instead of recommending that he be imprisoned in the penitentiary for life; and it is contended by the plaintiff in error that, under the decision in *Archer vs. The State*, 35 *Ga.* 5, the verdict is illegal and ought to be set aside.

We do not agree with the plaintiff in error upon this question. We think that the act of 1875 (acts 1875, p. 106,) is conclusive on this point, a recommendation to mercy in capital cases of homicide being therein defined or declared to mean a recommendation to imprisonment for life. This section of that act is omitted from the code of 1882. Judge BLECKLEY, in his report of omissions in the code of 1882, refers to this section as one of the acts so omitted; and for some reason it seems that it was again omitted from the *addenda* made up from his report and attached to the code. It was claimed by the plaintiff in error that this act was not of force, and was repealed by the act of 1878, amendatory to section 4323 of the code. The act of 1878 simply changed that section of the code so as to permit a recommendation by the jury in capital cases, without regard to whether the evidence is merely circumstantial or not. And the act of 1875 is just as consistent with section 4323 after its amendment as it was before. This ground of exception therefore cannot be maintained. The act was a proper subject of legislation, and beyond doubt is still of force. The act being of force, it is an answer to the decisions relied upon by the plaintiff in error in 35 *Ga.* (above cited), and 48 *Ga.* 119 and 49 *Ga.* 451.

Indeed, in our opinion, we think the act was passed to meet the views of this court as pronounced in these cases. We, therefore, hold that the verdict of the jury in recommending the prisoner to mercy, instead of recommending that he be imprisoned in the penitentiary for life, under the act of 1875, means the same as if they had recommended imprisonment for life. The act declares that that shall be the meaning of this particular verdict. It would be the better practice, however, for the judge below to

point out always in his charge to the jury the particular kind of verdict the jury should find in cases of this sort. The jury then would know exactly what the effect of a recommendation of this sort would be.

3. We do not think that the court erred in the matter complained of in the fourth ground of the motion. It seems, from the record of this case, that in order to aid the solicitor-general, the court allowed the reporter or stenographer of the court to propound the questions to the jury when put upon their *voire dire*, the solicitor-general accepting or rejecting the jurors as they were put upon the State. When Paschal had qualified himself as a juror, the reporter inadvertently, and without waiting for the solicitor-general, put the juror upon the prisoner, and he was immediately accepted by the prisoner. At or about the same time, the solicitor-general rejected the juror, and announced that it was not the duty of the reporter to accept the juror for the State. but simply to propound the questions to the jurors. Upon this statement, the court held that the juror had not been accepted by the State, and allowed the solicitor-general to challenge him.

Upon this statement of the facts, we do not think this was error. The reporter was not charged with the duty of accepting or rejecting jurors. His duty was simply to relieve the solicitor-general of propounding these questions to the jury. This is frequently done in several circuits of this State, either by the reporter or the clerk of the court, in order to relieve the solicitor-general, who, if he is any way feeble, sometimes breaks down before the trial commences; but in no case do they exercise the right to represent the solicitor-general in accepting or rejecting jurors. This being a mere inadvertence on the part of the reporter in putting the juror upon the prisoner before the solicitor-general had signified his acceptance, we hold that it was not error in the court to allow the solicitor-general his challenge.

4. We do not think the court erred in overruling the

motion upon the 5th ground. Standford's affidavit is not positive, but is vague, indefinite and uncertain as to what the juror had said to him. And while Hawes's affidavit is more positive, it should not be allowed to outweigh the solemn oath of the juror made in open court. The juror swore that he had not formed or expressed an opinion, and that he was impartial and had no bias or prejudice against the defendant. Hawes's affidavit is, that he had said before the trial that he thought that the defendant ought to be hung. 61 *Ga.* 182; 63 *Id.* 601. This may have been true, and yet, under many rulings of this court, might not have disqualified him from being a juror. To disqualify one from being a juror in a criminal case, he must have formed and expressed an opinion, either from having seen the crime committed, or from having heard the testimony under oath. A man may form and express an opinion from rumor, or from newspaper reports, and yet, under our law, be qualified and a competent juror to try the case, if the opinion has not become fixed and determined. If the rule were otherwise, in this day of intelligence, when nearly everybody reads the newspapers, and if the reading of reports in the newspapers should disqualify one from acting as a juror, the courts would be able to get very few qualified jurors; and those qualified to serve would be generally the most ignorant in the community. *Westmoreland vs. The State*, 45 *Ga.* 277, and cases there cited. It appears from the record that Reese, the juror, died after the trial, and that this amendment was not made until after his death. Judge Roney, in overruling this motion, wrote his judgment, which is in record, and he states that he was well acquainted with Reese, the juror, and that he was a man of high character, and in his opinion, would not have served on the jury in this case if he had been biased or prejudiced against the prisoner.

Judgment affirmed.