## CHAPMAN *v.* THE STATE.

1. Where a number of persons were jointly indicted as principals for murder, and before arraignment a plea in abatement was filed by all of them, with a prayer to quash the entire indictment, on the ground that there was no evidence before the grand jury connecting one of the defendants other than the one on trial with the murder, but there was nothing in the plea alleging that there was no evidence before the grand jury connecting the defendant on trial with the murder, the court did not err in sustaining a demurrer to such plea in abatement. (ATKINSON, J., dissents.)

2. Where, on the trial of one charged with murder, a juror has, in reply to the statutory questions on his voir dire, shown himself prima facie competent, the accused, by merely requesting that the court act as a trior, is not authorized, without more, to propound to the juror the same questions excluded by the court.

3. Where a juror, on the trial of a case for murder, qualified by satisfactorily answering the prescribed questions on his voir dire, and the court permitted counsel for the accused to ask the juror if he had not disqualified himself on a prior trial of the same case, and the juror replied that he had, this, without more, did not show the juror to be incompetent.

4. Where a juror qualified on the voir dire and was put upon the defendant, it was not error to refuse to allow the following question to be asked him: "If it was not true that he was not on speaking terms with the defendant C. K. Chapman?"

(*a*) Before additional questions can be propounded under such circumstances the juror must be put upon the court as a trior, and the defendant must introduce aliunde evidence and show that the juror is not impartial, and it is entirely with the court as to whether further questions will be allowed.

5. The assignments of error on the charge of the court, and on refusal and omission to charge, are without merit.

6. Where in a motion for a new trial an attack is made upon a juror upon the ground that he was not impartial, a finding by the judge on conflicting evidence (which was sufficient to support the finding) that the juror was competent will not be reversed, unless, under all the facts of the case, his discretion was manifestly abused.

7. The evidence authorized the verdict, and the court did not err in re-fusing a new trial.

No. 850. NOVEMBER 15, 1918.

Indictment for murder. Before Judge Littlejohn. Sumter superior court. February 6, 1918.

*F. A. Hooper, G. C. Palmer, L. J. Blalock, Wallis & Fort, M. A. Walker,* and *J. F. Souter,* for plaintiff in error.

*Clifford Walker, attorney-general, John A. Fort, solicitor-general, J. A. Hixon, Jule Felton, Harry Hawkins, Steve Pace,* and *M. C. Bennet,* contra.

HILL, J. Charles K. Chapman, W. I. Johnson, Walter John-son, John Etheridge, Charlie Chapman Jr., and H. A. Harp were jointly indicted as principals for the murder of Walter H. Wade. The defendants filed a plea in abatement, alleging substantially that the indictment was void as to the defendant Harp, because the grand jury was without any legal evidence before it connecting that defendant with the commission of the crime charged in the indictment, and that there was no evidence before the grand jury upon which to predicate the bill of indictment against Harp. It was also alleged that the indictment was void as to each and all of the defendants, because each and all of them were jointly in-dicted as principals and as the actual perpetrators of the crime, and that no legal evidence was introduced before the grand jury connecting Harp with the offense, and no evidence was offered before the grand jury tending to show his guilt, either indepen-dently or in connection with any of the defendants named. It was alleged in the plea, which was verified, that it was filed at the first term after knowledge of the facts came to the defendants. The de-fendants prayed that the indictment be quashed. A demurrer to the plea was sustained, and the defendants excepted pendente lite.

Even if the plea in abatement was good at all, it was good only as to the defendant Harp, and he did not move to quash the in-dictment as to himself separately. The indictment, properly con-strued, must be treated as a separate indictment against *each* de-fendant. There was no contention in the plea, or on the argu-ment here, that there was not evidence enough to authorize the indictment as to the defendant C. K. Chapman. Nor was there timely objection to excusing the jurors related to Harp. There was no challenge to the poll or to the array. See, in this connec-tion, *Turner* v. *State,* 114 *Ga.* 421 (2), 422 (40 S. E. 308), where

challenge to the poll, challenge to the favor, and challenge for principal cause are fully discussed. It is not contended, as before stated, that there is no evidence to sustain the indictment as to the defendant C. K. Chapman, and the indictment is to be considered as one against each defendant. It is therefore good as against the defendant C. K. Chapman, even if there was no evidence against the defendant Harp. The court did not err in sustaining the demurrer to the plea in abatement.

2. The plaintiff in error in the 2d, 3d, and 4th grounds of his amended motion for a new trial complains that the court, after the jurors had qualified on their voir dire, refused to allow him to propound the following questions to certain named jurors: "Have you read in the Times-Recorder or other newspaper, or heard read in your presence, any account or accounts of the evidence delivered in any former trial of the accused, and from reading such accounts, or having heard the same read in your presence, formed an opinion that the defendant on trial is guilty?" "Have you from any source received or heard such accounts of the facts in this case as to cause you to believe the defendant is guilty?" "From anything you have heard as to the facts of the case, do you entertain the opinion that the defendant on trial is guilty?" It does not appear from the amended motion that the jurors Gammage, Forest, Hall, and McGee were put upon the court as a trior, nor was any effort made to do so. After the jurors Brown and Wise had satisfactorily answered the statutory questions on their voir dire, the court declined to permit counsel for the accused to propound to the jurors the questions above quoted. Counsel then asked that the jurors be put upon the court as a trior, to which the court assented. Thereupon, immediately and without the introduction of any aliunde evidence, counsel attempted to propound the same questions to these two jurors, which the court refused to permit them to do. In the case of *Cox* v. *State*, 64 *Ga.* 375 (3), 404 (37 Am. R. 76), it was said by Bleckley, J., speaking for the court: ' "When acting strictly in the capacity of trier, there is no doubt that the presiding judge may decline to have the juror further examined as to his competency, and may look alone to the aliunde evidence that is adduced. Code, sec. 4682; 9 *Ga.* 121; 21 *Ib.*, 220, 227; 32 *Ib.*, 672." And that has been the uniform rule in this State. Neither the counsel for the State nor the ac-

cused has the legal right to propound to the jurors on their voir dire any other questions than those prescribed by statute. *King* v. *State,* 21 *Ga.* 220 (2); *Pines* v. *State,* 21 *Ga.* 227 (2); *Nesbit* v. *State,* 43 *Ga.* 238; *Monday* v. *State,* 32 *Ga.* 672 (79 Am. D. 314); *Carter* v. *State,* 56 *Ga.* 463, 467; *Dumas* v. *State,* 63 *Ga.* 600; *Johnson* v. *State,* 65 *Ga.* 94 (3); *Simmons* v. *State,* 73 *Ga.* 609 (54 Am. R. 885); *Woolfolk* v. *State,* 85 *Ga.* 69 (9), 71 (11 S. E. 814); *Lindsay* v. *State,* 138 *Ga.* 818 (76 S. E. 359); *Polk* v. *State,* 148 *Ga.* 34 (95 S. E. 988); Penal Code, § 1001 et seq.

3. The fifth ground of the amended motion complains that the court erred in holding the juror E. L. Gammage competent, after he had answered the questions on the voir dire and had qualified as a juror and was put upon the defendant by the State, and the defendant's counsel by permission of the court had asked the juror the following questions: "On the former trial of this case did you not disqualify and state that your mind was not impartial between the State and the accused?" Answer: "I did." Whereupon the following colloquy took place between the juror and the court: Juror, "Can I make a statement, your Honor?" The court: "Yes, sir." Juror: "I understood that the judge said, any juror had a right to change his opinion and qualify; is that not true, Judge?" The court: "Not from me, you did not get that from me." Whereupon the court ruled that the juror was qualified and put said juror upon the defendant. Whereupon the juror was objected to by the defendant. The juror qualified on his voir dire and answered satisfactorily all the statutory questions propounded, and stated that he was at the time of the trial impartial. It has been held: "That a juror has formed and expressed an opinion from rumor or from newspaper reports of the evidence upon a former trial will not disqualify him, unless that opinion be a fixed opinion and the juror should answer that that opinion would not yield readily to the testimony, or that he could not sit as an impartial juror." *Fogarty* v. *State,* 80 *Ga.* 450 (10), 462 (5 S. E. 782). In *Wilburn* v. *State,* 141 *Ga.* 510 (3), (81 S. E. 444), it was held: "To disqualify one from being a juror in a criminal case, he must have formed and expressed an opinion, either from having seen the crime committed, or from having heard the testimony under oath. One who from some other cause has formed and expressed an opinion which is not fixed and determined, and

who indicates his competency by answering the statutory questions on his voir dire, is not an incompetent juror. *Westmoreland* v. *State*, 45 *Ga.* 225; *Blackman* v. *State*, 80 *Ga.* 785 (7 S. E. 626); *Fogarty* v. *State*, 80 *Ga.* 450 (5 S. E. 782); *West* v. *State*, 79 *Ga.* 773 (4 S. E. 325). See also *Norton* v. *State*, 137 *Ga.* 842 (74 S. E. 759)." Applying the above rule to the facts of the present case, it was not error to hold the juror competent.

4. Error is assigned in the 6th ground of the motion on the ruling of the court in refusing to allow the following question propounded to juror E. C. Howell, after he had qualified on the voir dire and was put upon the court as a trior, to wit: "If it was not true that he was not on speaking terms with the defendant C. K. Chapman?" The defendant was then allowed to be put upon the stand, and testified: "Q. Dr. Chapman, are you acquainted with Mr. E. C. Howell, the juror here? A. Yes, sir. Q. How long have you known him? A. Some eight or ten years. Q. Some eight or ten years? A. Yes, sir. Q. What relations of friendliness or unfriendliness between you and he is there? A. He owed me a little dental bill for his wife, and I had a man garnisheed that was boarding with him, to get his bill paid, and— Q. (interrupting) Speak louder. The court: Speak so you can be heard. A. (Dr. Chapman): I am so weak I can hardly talk. I had him, the man, garnisheed that lived with Mr. Howell and boarded there with him, for some money he owed me for dental [bill] for his wife, and he got mad about it, and has not spoken to me since, is the reason I have not spoken. Q. Has he, or not, refused to speak to you? A. Yes, sir." As observed above, the juror had answered the statutory questions on the voir dire, which prima facie qualified him as competent; and it was then with the court whether to allow him interrogated further as to any supposed disqualification. And in such case the judgment will not be reversed for the court's failure to allow additional questions. Before additional questions can be propounded under such circumstances, the defendant must introduce aliunde evidence and show that the juror is not impartial, etc.; and then it is entirely with the court as to whether further questions will be allowed. According to the decisions cited in the first part of this opinion, the judgment of the court sitting as a trior on a question of fact is final and not reviewable. Even if the ruling is reviewable, the court did not

abuse his discretion in holding the juror competent. And see *Turner* v. *State,* supra; *Galloway* v. *State,* 25 *Ga.* 596, 599 (2); *Licett* v. *State,* 23 *Ga.* 57. This may be a harsh rule, but it is so well established in this State that we feel constrained to follow the rule already laid down many times by this court.

5. The assignments of error on the charge of the court, and the refusal and omission to charge, are without merit.

6. The 11th ground of the motion for a new trial complains that three of the jurors who were empaneled and served upon the jury that rendered the verdict of guilty against the defendant, namely, L. S. Thomas, L. A. McCrea, and W. W. Hines, were not qualified jurors to try the case, for the reason that they had formed and expressed opinions as to the guilt of the defendant before being taken on the jury. The evidence as to the competency of the jurors was conflicting, but from it the judge was authorized to find that they were competent. It has been held often by this court that where an attack has been made upon a juror on the ground that he was not impartial, a finding by the judge that the juror was competent will not be reversed, unless, under all the facts of the case, his discretion is manifestly abused. It was not so abused in the instant case. *Hall* v. *State,* 141 *Ga.* 7 (80 S. E. 307), and cases cited.

7. The evidence authorized the verdict. The evidence both for the State and the accused was very voluminous. It was both circumstantial and direct. The principal witness for the State, an eye-witness, Mrs. Yertie Howell, testified positively to the killing without provocation. She testified that on the night of the homicide she, John Etheridge, "Little Charlie" Chapman, Walter Wade, the deceased, and the defendant, Dr. C. K. Chapman, all went riding in an automobile; that John Etheridge, "Little Charlie," and Walter Wade sat on the front seat, Mr. Wade being at the wheel. Dr. Chapman and the witness were on the rear seat. She didn't know where they went. "They said out the Andersonville road." "As we got, I guess, in the bottom, Dr. Charlie says, 'Stop and let's have supper,' and the car slowed down, and he began feeling in his pockets, and I asked him what was he going to do. He didn't say anything, and I began watching him, and I saw a gun, and I asked him what he was going to do, and he still didn't say anything, but he raised his hand, and I grabbed him around the neck,

and asked him for God's sake not to do that; but he fired, just as I was speaking to him. I was pulling him to one side. I don't remember how many times he fired. He fired at Mr. Wade. Before he fired the pistol W. I. Johnson told him to shoot him, damn him; if he couldn't shoot him, to give him the gun. At that time Wade was shifting the gears on the car, I suppose. He was kinder leant—he was sitting erect, he was leaning like he was slowing the car down. When the pistol fired he dropt right under the wheel immediately. Little Charley caught the car and steered it;" etc. She further testified that after the shooting they drove out the Andersonville road to the river—the big car in front. "They stopped at the river bridge—there was a bridge there, and they said it was the river bridge. The Walter Wade car drove on the bridge, and I did not see it, only the bulk, until it came back, after it turned around. The car I was in stopped and turned around on this side of the bridge. Dr. Chapman said they threw Walter Wade's body in the river. I never saw them." The defense sought to impeach the testimony of this witness, but the jury evidently believed her. It was a question for the jury as to whether they would believe her or not. There was much other evidence of a circumstantial character. The evidence was sufficient to support the verdict, and the court did not err in refusaing a new trial.

*Judgment affirmed. All the Justices concur, except Atkinson, J., dissenting.*