## BLOODWORTH *et al. v.* THE STATE.

1. A trial by jurors who are for any reason disqualified is illegal and the verdict of such jury is no lawful verdict, and must be set aside. The poisoning virus from one prejudiced juror is in law presumed to contaminate the entire body, and thus to make a fair trial impossible. However, although there may be evidence adduced before the trial judge,

---

Criminal Law 16 C. J. pp. 571, n. 11; 759, n. 66, New; 824, n. 68, 69; 878, n. 35; 888, n. 15, New, 24, New; 889, n. 29, New; 1027, n. 15, 17, 18; 1036, n. 62; 1049, n. 82; 1050, n. 84; 1063, n. 85; 1152, n. 18, 22; 1247, n. 45: 17 C. J. pp. 221, n. 8, New; 238, n. 21, 24, 26; 263, n. 79; 317, n. 10; 359, n. 64.

Juries 35 ·C. J. pp. 342, n. 93; 344, n. 13.

Omni exceptione majus 29 Cyc. p. 1482, n. 26.

sufficient to establish the disqualification of a juror whose qualifications are attacked because of alleged prejudice and bias, still the trial judge is the sole trior as to this issue; and where a counter-showing is made to the attack upon the impartiality of a juror, the comparative weight of the testimony introduced in support of the counter-showing with the testimony tending to show prejudice and bias is a matter for the exclusive determination of the trial judge, and the exercise of his discretion will not be controlled unless there appears to have been a manifest abuse of discretion. In the present case there appears to have been no abuse of discretion, and the court did not err in overruling the motion for a new trial, based upon the principle that the defendants were entitled to a jury omni exceptione majores.

2. The exceptions contained in the fourth, fifth, sixth, and seventh grounds of the amendment to the motion for a new trial, each of which relates to the propriety of instructions which should not or should be given to the jury with relation to the recommendation to mercy or to imprisonment in the penitentiary for life in capital cases, are without merit. The instructions as given were in some respects more favorable than the requests which were refused, and fully presented to the jury the principle that the right of the jury trying a capital case to recommend the accused to mercy, or to recommend that they be imprisoned in the penitentiary for life, is wholly a matter within their discretion, unaffected, unhampered, and unrestricted by any rule of law, and not hampered by the requirement that they be based upon any reason other than the wishes of the jurors.

3. The court charged the jury that the defendants entered upon their trials with a legal presumption of innocence in their favor, and that this legal presumption remains with the defendants throughout the trial, etc. Even if the denomination of the presumption as being one of law, by the use of the word *"legal,"* be not so strictly accurate as to have instructed the jury that this presumption is in the nature of evidence and remains with the defendants throughout the trial, the substitution was favorable to the defendants, and there is no merit in the exception as presented in the assignment of error.

4. In the request for an extension of the time allowed by law for argument, counsel for the plaintiffs in error failed to state that they could not do the case justice within the time prescribed and that it would require additional time for that purpose; and for this reason as matter of law the court did not err in refusing to extend the time for argument. Moreover, aside from the rule, the exception is without merit, because the trial judge had informed the counsel selected to make the concluding argument for the defendants, before his argument began, that he would not stop him if he should exceed the allotted time, and yet counsel completed his argument without having consumed even the remainder of the time allowed by law which had not been consumed by his associates.

(a) Since it does not appear that either of the defendants was represented by counsel who did not represent the other and the defendants waived their right to sever and be tried separately, the court was authorized to treat the case, so far as the number of arguments was concerned, as one trial, and did not err in refusing a request that four attorneys be permitted to argue the case in behalf of the defendants.

5. It is not illegal to hold court at night. Since there did not appear, from the showing made by counsel for the plaintiffs in error before the trial court, any sufficient reason why the trial should not proceed by hearing a portion of the arguments after supper, reserving the concluding argument in behalf of each party until the following morning, the exception presented in the tenth ground of the amended motion is without merit. The mere fact that counsel may be tired, without more, is not a sufficient reason for suspending an important trial either by day or by night.

6. Under the provisions of the Penal Code (1910), § 1027, there was no error in admitting certain evidence which it is admitted was given on a former trial upon the same issue and between the same parties, which was objected to by the accused upon the ground that the testimony, which was that of a deceased witness who had testified at the former trial, contained references to certain physical objects, and for that reason was inadmissible unless said physical objects, "the articles had at the former trial [meaning suit-cases, raincoat, collar, undershirts, pants, overalls, and grip] were in court now." This is true although the aforementioned articles were not produced in court at the trial now under review nor offered in evidence, and even though the State did not account for their absence. The admission of the testimony just referred to, taken from the approved brief of evidence on the former trial, which was used upon the hearing of the motion for a new trial in the former trial, did not prevent the accused from themselves presenting any of the articles which may have been introduced as objective or physical evidence in the former trial. In an instance where one party introduces only the written transcript of the oral testimony of a witness, the opposite party has the right to prove additionally other testimony given by this witness at that trial and not included in the brief.

No. 4996. November 17, 1925. Rehearing denied December 17, 1925.

Murder. Before Judge Roop. Muscogee superior court. June 15, 1925.

*Homer Beeland, C. W. Foy, W. E. Steed,* and *J. M. Halcher,* for plaintiffs in error.

*George M. Napier, attorney-general, W. R. Flournoy, solicitor-general, T. R. Gress, assistant attorney-general,* and *George C. Palmer,* contra.

Russell, C. J. This case has previously been before this court, and is reported in 159 *Ga.* 67 (124 S. E. 888). In that instance the jury found both of the defendants guilty, without recommendation, and this court affirmed the judgment of the trial court in overruling the motion for a new trial. This court again considered certain questions relating to the sentence and its enforcement, in *Bloodworth* v. *State,* 160 *Ga.* 197 (127 S. E. 458), and by affirming the judgment of the superior court decided adversely to the contentions of the plaintiffs in error. Upon an extraordinary mo-

tion for a new trial the defendants were thereafter granted a new trial, the motion being based upon the ground that one of the jurors who had rendered the verdict was disqualified, by reason of which the previous trial was in law a nullity. As well said by Mr. Justice Atkinson in *Myers* v. *State,* 97 *Ga.* 76, 91 (25 S. E. 252) : "The jurisdiction to try capital felonies is vested by the constitution and laws of this State in the superior courts, and a superior court organized for the final exercise of this supreme attribute of a sovereign power must consist of a judge appointed by law, and a jury organized in accordance with the requirements of the law. When these constituent elements exist, the court is complete. Until then, it is not. If it appear on the face of the proceeding that any of the primary requisites to the existence of a valid court are wanting, its judgment is void, and may be attacked at any time and anywhere. . . . It is as essential to the rendition of a legal judgment in a case in which a jury trial is required, that the jury and each member of it should be legally competent to sit as a part of the court, as it is that the judge who presides should labor under no legal disability." In a criminal case involving the life or liberty of one accused of crime, even if the defendant be apparently clearly guilty, he is as much entitled to his fullest legal rights as if he were as innocent as an angel. The preservation of liberty and society itself depends upon the unswerving observance of this rule and the consciousness that the right of a fair, impartial, legal trial is unquestioned and unquestionable. In consequence of the overshadowing importance of these principles we have made a painstaking investigation of every point suggested in the record, in order to ascertain if these defendants, or either of them, has been deprived of any right accorded him by law. The skeleton motion for a new trial, embracing the usual general grounds, including the usual complaint that the verdict is contrary to the evidence and without evidence to support it, might in a strictly technical view be treated as abandoned. But we have carefully considered the brief of the evidence in the present trial, and find not only that the proof of guilt is overwhelming, but also that the defendant Jones, not even denying his guilt, merely made a plea for mercy, so that he might serve a sentence for life, which he vowed to devote to the service of the Almighty. Nor does the defendant Bloodworth in his statement, though he vigorously attacks the testimony of one of the witnesses for the prosecution as

being false, deny evidence from other witnesses to the same effect as that of the witness who he says swore falsely. The argument of the case before this court and in the brief has been confined to exceptions to certain portions of the charge of the court, to the refusal of the court to give to the jury certain instructions which were requested in writing, both relating to the discretion and power of the jury to substitute life imprisonment for the death penalty, to the charge of the court upon the subject of reasonable doubt, to the limitation imposed upon the time allowed for argument, to the action of the court in proceeding with the trial of the case at night, and to the alleged disqualification of J. Foy Brown, one of the jurors who served and returned the verdict in the case.

In the opinion of the writer, in any case where so grave an issue as the life of a human being is at stake, if any one of these assignments of error, supported by law or facts, disclosed a ruling that tended to prejudice the rights of the accused, he should be awarded a new trial. Not only for the sake of the defendant in the particular case, but as a precedent guaranteeing all citizens in all times that their every right when on trial for crime would be protected in accordance with the principles of magna charta, the constitution of the United States, and the constitution and laws of this State. In our consideration of the aforementioned assignments of error we shall alter the order in which they have been stated and in which they appear in the amendment to the motion for a new trial. We take up first the eleventh ground of the amendment, which alleges that "J. Foy Brown, who served on the jury which returned the verdict of guilty against the defendants, was disqualified to serve as a juror on said jury, because of prejudice and bias on the part of said Brown against the defendants." We consider this ground first, because, if the disqualification is established, the entire trial was a nullity, and it would be unnecessary to consider any of the remaining assignments of error. A new trial is demanded where there is no doubt as to the disqualification of one of the jurors who rendered the verdict, unless such disqualification was waived by knowledge of that fact or by the neglect to use ordinary diligence to discover the disqualification before the trial. *Georgia R.* v. *Cole,* 73 *Ga.* 713; *Smith* v. *State,* 2 *Ga. App.* 574, 581 (59 S. E. 311), et cit. In all cases, civil as

well as criminal, each party is entitled to a jury omni exceptione majores. The poisoning virus from one prejudiced juror is in law presumed to contaminate the entire body and thus to make a fair trial impossible. In the present case the accused introduced affidavits of W. C. Hall and L. R. Yates to establish prejudice and bias on the part of the juror. Hall's testimony was to the effect that he heard the juror J. Foy Brown, at the Columbus Belting and Spool Works, at a time prior to the trial, named by the witness, and in regard to the defendants, state that "if anybody ought to hang those boys should." Yates's testimony in substance was that sometime shortly after it was said that Judge Searcy had signed an order in the case against the defendants (about February 15, 1925) he heard a statement of the juror, J. Foy Brown, made with reference to the defendants Willie Jones and Gervis Bloodworth, and in the Rankin House barber-shop, and that as near as he could remember the exact words used by Mr. Brown were, "they ought to hang," and that this statement was made in a conversation with reference to the trial of these defendants, and others were present at the time, but the witness could not remember their names. The affidavits of these witnesses were accompanied by affidavits vouching for their respectability, character, and truthfulness, and the requisite affidavits from the defendants and their counsel.

In this State the judge is the sole trior of the evidence as to the disqualification of jurors, based upon the ground of prejudice and bias, and the exercise of his discretion in the appraisment of testimony will not be disturbed unless there is a manifest abuse of discretion. Had there been no further evidence than that just referred to, it would have been error to refuse a new trial; for under the strict rules which have been announced by this court, designed to place the impartiality of jurors above and beyond suspicion, as said by Mr. Justice Atkinson in the *Myers* case, supra, it would be hard to understand how the jurors entertaining the fixed opinion that the defendant should be hanged could be trusted to give his case fair consideration at any stage of the trial, whether evidence, argument, or the charge of the court. However, the above was not all the evidence upon the subject of disqualification which was before the court. The State made a counter-showing raising issues of law and fact. In the first place the witness, Hall,

22

to whose affidavit we have referred, himself testified in a subsequent affidavit that he regarded the named juror as a man of unquestionable character and integrity. He further swore that "in his opinion, that at the time said J. Foy Brown qualified as a juror in the above-entitled case, that he was perfectly fair and impartial between the State of Georgia and the accused, and that he did not have any prejudice or bias on his mind either for or against them." Further, he swore that "it is his opinion that the said J. Foy Brown did not qualify as a juror in said case for the purpose of inflicting the death penalty upon said defendants, and that his verdict was based exclusively upon the evidence in the case." At the hearing upon the motion for a new trial the State also presented the affidavit of the juror himself, in which he testified that he did not recall having discussed the case with W. C. Hall upon the occasion mentioned by him in his affidavit, but he specifically denied that he ever stated to L. R. Yates, or any one else, that Gervis Bloodworth or Willie Jones "ought to hang." In explanation of the state of his feelings and illustrative of his absence of feeling in the matter, the witness further testified "that after Gervis Bloodworth and Willie Jones were convicted of murder in Taylor superior court the case was generally discussed in his place of business, and this deponent was asked what he thought about the case. Deponent says that he replied that he did not know, but according to the newspaper reports, if they were going to hang folks, probably they should be hung; but deponent further says that he never stated of his own opinion that either Gervis Bloodworth or Willie Jones or both of them should hang for the crime they had committed, except as evidenced by the verdict of guilty which this deponent agreed to in Muscogee superior court, May term, 1925. . . Deponent further says, that, prior to the questions being propounded to him on the voir dire at the time he qualified as a juror in said case, the presiding judge in said case explained to the jurors as a panel that in order to be qualified jurors in said case that each juror should have no prejudice or bias resting on his mind either for or against the prisoners at the bar. And deponent further says that at the time he was taken as a juror in the above-entitled case that he had neither formed nor expressed any opinion in regard to the guilt or innocence of the defendants, and that he had no prejudice or bias resting on his

mind either for or against the defendants, and that his mind was perfectly impartial between the State and the defendants, and that he made up his verdict in the case solely and exclusively from the evidence. Deponent further says that he is emphatic in the statement that he never stated to W. C. Hall or L. R. Yates or any one else that Gervis Bloodworth and Willie Jones 'ought to hang,' and the only expression he ever made in regard to the case was as stated above in this affidavit." A number of witnesses testified to the character, standing, and veracity of the juror, and that his associates were among the best citizens in Columbus.

The counter-showing put in issue before the trial judge the fact as to whether J. Foy Brown was or was not a qualified juror. A review of his judgment upon that issue presents only the question as to whether there was, as a matter of law, an abuse of discretion, which is a mixed question of fact and of law. The law naturally views the issue most critically, and yet attaches weight to the sworn reply of a sworn juror whose verdict is attacked upon the ground that his finding was induced by prejudice or bias. *West* v. *State,* 79 *Ga.* 773 (4 S. E. 325) ; *Blackman* v. *State,* 80 *Ga.* 785 (7 S. E. 626) ; *Chapman* v. *State,* 148 *Ga.* 531 (97 S. E. 546). So much so that where allegations indicating that the juror's finding was induced by prejudice or bias are supported by only one witness, the rule is that the discretion of the judge as trior will not be held to have been abused. *Blackman* v. *State,* supra. In one case, where the juror had died, this court held the certificate of the trial judge that he knew the deceased juror to be a most honorable and upright man to be entitled to weight, and the verdict was not set aside, although there was testimony that the juror had made statements similar to those set forth in the present record. *West* v. *State,* supra. In the present case there are two witnesses testifying to the statements on the part of the juror prior to the trial, which the juror in effect denied. But there are other circumstances in this case to which weight must be given, under our settled rules of law. One is the time at which the alleged expressions were made, and whether the expressions were indicative of a prejudice and bias so fixed as that it was not subject to be changed by the evidence; and so it has been held more than once that although a juror might entertain an opinion as to the guilt or innocence of one accused of crime, formed from rumor

or newspaper reading, he would not necessarily be legally disqualified if he had had no further means of information in regard to the facts of the case. *Westmoreland* v. *State,* 45 *Ga.* 225; *West* v. *State,* supra; *Fogarty* ·v. *State,* 80 *Ga.* 451 (5 S. E. 782); *Blackman* v. *State, Myers* v. *State, Chapman* v. *State;* supra; *Wilburn* v. *State,* 141 *Ga.* 510 (81 S. E. 444). The true question which the trial judge must determine, in applying the law to a consideration of the evidence before him, is whether the opinion the juror may have expressed is so fixed as that it will not readily yield to the evidence delivered on oath and be controlled by a consideration of the evidence alone. We think that the judge in the present case, in view of the uncontradicted explanation of the juror as to the circumstances under which he may have made expressions in regard to the guilt of the defendants, was fully authorized to find that whatever opinion the juror in the present case may have entertained at the time the alleged expressions were made was based upon rumors or news notes in the press, which would readily yield to any credible evidence that might be introduced, and that the opinion would be controlled, and entirely obliterated if necessary, by the evidence and by nothing else. We are therefore of the opinion that the learned trial judge did not err in overruling the eleventh ground of the motion for a new trial.

In the fourth, fifth, sixth, and seventh grounds of the motion for a new trial complaints are made as to the charge of the court upon the right of the jury to recommend the imposition of a sentence of imprisonment in the penitentiary for life instead of the infliction of the capital penalty. In the first two of these grounds error is assigned upon two excerpts from the charge of the court, and in the two last-mentioned exceptions the defendants assign error upon the refusal of the court to charge the requests for instructions as set forth in the record. The charge, as said by Mr. Chief Justice Bleckley in *Brown* v. *Matthews,* 79 *Ga.* 1 (4 S. E. 13)', when "torn to pieces and scattered in disjointed fragments, may seem objectionable, although when put together and considered as a whole it may be perfectly sound. The full charge being in the record, what it lacks when divided is supplied when the parts are all united. United they stand, divided they fall." In charging upon the subject of recommendation to life imprisonment, we think the judge correctly instructed the jury and was so emi-

nently fair to the defendants as to leave no just cause for complaint. The very full and elaborate instructions of the court upon this subject were as follows:

"Now, gentlemen, if you should convict the defendants under the law I have given you in charge and under the evidence in this case, taking along with the evidence the defendant's statement, giving it such—the statements of the defendants, giving them such weight as you, see proper to give them, it would be your duty to find them guilty, and the punishment in that event would be death by hanging, unless the jury should recommend the defendants to mercy, in which event the punishment would be imprisonment in the penitentiary for and during their natural lives. So that, gentlemen, if you find the defendants guilty and you think the extreme penalty of the law should be visited upon them, you will say, 'We, the jury, find the defendants, Gervis Bloodworth and Willie Jones, guilty.' A verdict reading that way would mean that the defendants would be guilty of murder and the penalty would be death by hanging.

"If you convict the defendants, gentlemen, and yet you do not believe the extreme penalty of the law should be visited upon them, why then you would have the right to recommend them to mercy. In that event the form of your verdict would be, 'We, the jury, find the defendants, Gervis Bloodworth and Willie Jones, guilty, and recommend them to mercy.' A verdict of that sort would mean that the defendants would be guilty of murder, and the punishment would be imprisonment in the penitentiary for and during their natural lives.

"Now, gentlemen, if you should find only one of the defendants guilty under the evidence in this case, why, the verdict would be as before stated to you, except you would name the one that you find guilty in your verdict. You understand that it is a matter for the jury to determine whether both of the defendants are guilty or only one, or whether both are innocent—it is a question of fact for this jury to determine. If you should find one of the defendants guilty and acquit the other, you would say, 'We, the jury, find the defendant' so and so, naming him, 'guilty.' And if you should recommend mercy in case you convict one and acquit one you say, 'We, the jury, find the defendant' so and so 'guilty, and recommend him to mercy, and we find the defendant' so and so 'not guilty.'

"Now, gentlemen, if you believe both defendants are guilty beyond a reasonable doubt, then you have the right and power to recommend either or both to life imprisonment. Your power and right to recommend the defendants to life imprisonment, or to mercy—which is the same thing, are not limited or confined in this case, nor under the laws of Georgia. It is a matter entirely in the discretion of the jury.

"As before stated, gentlemen, you have the right, if you find both of the defendants guilty, you have the right to recommend one to mercy, and to refuse to recommend the other to mercy. It is a matter entirely for the jury.

"Now, gentlemen, before you will be authorized to convict the defendants or either of them his guilt should be made plainly and manifestly to appear beyond a reasonable doubt.

"If you acquit the defendants, you will say 'We, the jury, find the defendants, Gervis Bloodworth and Willie Jones, not guilty.' "

The defendants say, as to the first paragraph of the charges just quoted: "The error in this charge resides in the fact that the court charged them that if they found the defendants guilty and they thought the extreme penalty should be visited upon them, that they would say, 'We, the jury, find the defendants, Gervis Bloodworth and Willie Jones, guilty.' Even though the jury thought the extreme penalty of the law should be visited upon them, they had the right to recommend that the defendants be punished by confinement in the penitentiary for and during their natural lives, their power being unconfined and unlimited under the law, and it was error for the court to charge, 'you would say, "We, the jury, find the defendants, Gervis Bloodworth and Willie Jones, guilty." ' " Not only does an examination of the instructions as a whole disclose that the jury could not have been misled into believing that they had no option other than to find the defendants guilty with the death penalty as a result, because of subsequent instructions, but even in the excerpt to which exception is taken the jury were told that if they found them guilty "the punishment in that event would be death by hanging, unless the jury should recommend the defendants to mercy, in which event the punishment would be imprisonment in the penitentiary for and during their natural lives." The subsequent instructions of the judge could not by any possibility have tended to impress the jury that the court was confining

or limiting their power to recommend if they saw proper for any reason to do so, unhampered by any restriction of law. It is insisted that the second charge quoted above was error, for the following reasons: "1. Even though the jury did not believe that the defendants should be recommended to mercy, and even though the jury believed that the death penalty should have been visited upon the defendants, still they had the right, the unlimited and unrestricted right, to recommend the defendants to mercy, though they believed them guilty beyond a reasonable doubt. 2. The jury may have believed from the charge given that they did not have the right to recommend the defendants to mercy if they believed that the extreme penalty of the law should be visited upon them. 3. It was error for the court to limit the visitation of the death penalty upon the defendants or the visitation of the punishment upon the defendants in the penitentiary for their lives by the question as to whether or not the jury believed the extreme penalty of the law should or should not be inflicted. 4. The belief of the jury as to whether or not the extreme penalty of the law should be visited upon the defendants was not the proper lawful rule to govern them as to whether or not they would inflict the extreme penalty of the law, but under our law the question of whether the extreme penalty should be inflicted or not is left in the discretion of the jury, and is not limited or confined in any case. The jury may have believed that the extreme penalty ought to have been inflicted, yet the jury had the lawful right to recommend the defendants to mercy." This exception in fine depends upon the impropriety of the use of the word "believe," used in the excerpt quoted. Certainly the use of the word did not restrict or limit the right of the jury to recommend the defendants to mercy even though the jury might be absolutely convinced of the guilt of the accused. The jury would understand that the use of the word "believe,—" "yet you do not believe the extreme penalty of the law should be visited upon them, why then you have the right to recommend them to mercy," would include every casual circumstance which might engender or create either by sympathy for parents or family, maudlin sentiment, or pity, incline the jury in the particular case to the opinion or belief that in the particular case an exception should be made, with the statement that the jury had the right in these circumstances to make the recommen-

dation. Certainly if the jury does not for some reason think, opine, and believe that the accused on trial should be recommended, the accused would have no right to be recommended. The right rests upon its exercise in any particular case on the part of the jury, that for reason or without reason they believe or desire a recommendation should be given. So it is our opinion that there is no merit in this ground.

The requests for instructions preferred in the sixth and seventh grounds of the motion for a new trial, so far as proper and perti-. nent to the case, are sufficiently covered in the instructions which we have quoted. The plaintiffs in error urge that the instructions requested were peculiarly adjusted to a distinct matter in issue, and that had the instructions requested been given, "it would have or might have materially aided the jury in understanding fully their discretionary power as to recommending the defendants or either of them to mercy, notwithstanding the fact that the jury may have believed that the defendants committed a grave and heinous crime and that there were no mitigating circumstances. We are in accord with the principle that a charge adjusted to particular facts under investigation is preferable to a statement of abstract principles of law without applying them to the issues in the specific case. *Roberts* v. *State,* 114 *Ga.* 450 (40 S. E. 297), and cases cited. But the instruction requested in this case was argumentative, therefore not perfect; and therefore the court did not err in refusing to give it. In the seventh ground it is alleged that the court erred in refusing to give in charge to the jury the following instruction which was duly requested in writing: "If . you believe the defendant Jones is guilty of the crime of murder beyond a reasonable doubt, it would be your duty under your oaths, or your sworn duty, to find him guilty. But it would not be your sworn duty to fail to recommend him to life imprisonment, unless in your discretion you think that should be done. If you believe the defendant Bloodworth is guilty of the crime of murder beyond a reasonable doubt, it would be your duty under your oaths, or your sworn duty, to find him guilty. But it would not be your sworn duty to fail to recommend him to life imprisonment, unless in your discretion you think that should be done. Your discretion in regard to whether you recommend either one of the defendants to life imprisonment, in the event that you believe that one is

guilty of murder beyond a reasonable doubt, is not limited or confined by the law or by the facts and circumstances in this case, but this question is solely in your discretion." It is contended that this request was legal and peculiarly appropriate to the facts of the case, and that the failure to give the charge as requested was harmful to the movants, because "if it had been given the jury would have probably had a better idea and conception of their great power as to the question of discretion when it came to preparing the form of their verdict, that is to say, whether they should render a verdict which would result in the infliction of the death penalty or a sentence of the defendants to confinement in the penitentiary." We are of the opinion that the instruction of the judge imparted complete knowledge to the jury (if they did not already possess that knowledge) of their absolute and unlimited power to recommend without any reason than their belief or opinion that the plea for mercy should be regarded. But aside from this, to have instructed the jury that it would not be their sworn duty to *fail* to recommend the defendants or either of them would, in our opinion, have been error, because the use of this language could be construed as an intimation on the part of the judge that in his opinion there should be no recommendation, but that the facts and circumstances of the case were such as required the infliction of the death penalty.

3. The eighth ground of the motion complains that the judge erred in charging the jury: "And the defendants, Willie Jones and Gervis Bloodworth, enter upon their trial with the legal presumption of innocence in their favor, and this legal presumption remains with the defendants throughout the trial until the State offers evidence of sufficient strength and character as convinces your minds beyond a reasonable doubt of the defendants' guilt." The exception is that the judge should not have used the word "legal." Even if the criticism be well founded, no one is permitted to complain of an error which is favorable to him, and therefore could not result in his injury. We do not hold that the use of the word "legal" was erroneous, though the presumption is usually defined as one in the nature of evidence. After all, all presumptions of law, as Judge Bleckley said, rise from the jury-box to the bench, being originally presumptions of fact; and even if the trial judge was premature in advancing a presumption in the nature of evi-

dence to a presumption of law, the added, dignity and weight of the presumption was necessarily advantageous to the defendants.

In the ninth ground the plaintiffs in error complain that the court refused to permit the defendants four arguments, and to extend the time allowed for argument to three hours to the side instead of two hours. Under the act of 1924 (Acts 1924, p. 75), regulating the argument of counsel, which has the effect of repealing rule number 5 of the rules adopted by the convention of judges on, July 2, 1924, it is provided: "in capital felonies counsel shall be limited to two hours on a side. . . . If counsel on either side, before argument begins, shall apply to the court for extension of the time prescribed for argument, and shall state in his place, or on oath, in the discretion of the court, that he or they can not do the case justice within the time prescribed, and that it will require for that purpose additional time, stating how much additional time will be necessary, the court shall grant such extension of time as may seem reasonable and proper." It is necessary that counsel make a showing in the manner prescribed, as to the necessity of an extension of time, in order to do justice to the case of their client. As the showing required by the statute was not made in the present case, we can not hold that there was any abuse of discretion on the part of the trial judge in refusing to extend the time for argument as requested. Furthermore, since it appears from the record that the counsel for the defendants did not consume the two hours prescribed by the act as the time allowed for argument in capital cases, although the counsel making the concluding argument had been told that even though he might exceed the allotted time the court would not stop him, it is plain that no injury resulted to the plaintiffs in error. But it is also insisted in this ground of the motion that the defendants were tried together, when each was entitled to have a separate trial (Penal Code, § 995). For this reason these plaintiffs in error must be held to have waived the right to two hours argument for each party, and to have consented to the application of the rule prescribed where only one party is on trial. In this case it does not appear that one of the defendants had counsel different from those representing the other.

In the tenth ground complaint is made that the court erred in continuing the trial into the night after having taken a recess for

supper. It is not illegal to hold court at night. It is not an abuse of discretion to proceed with the trial of a case at night, unless there are peculiar circumstances which would make this exercise of the court's discretion such an abuse of discretion as would be injurious to the parties. The showing made was not sufficient to require the grant of a new trial for either of these reasons: "Because during the progress of the trial, and after both sides had announced closed, and late in the afternoon of May 19, 1925, and before the arguments began, Mr. Homer Beeland, the leading counsel for the defendants, moved the court not to require the arguments for the defendants to be made during the night of May 19, 1925, and said Beeland stated then and there in his place to the court that counsel in said case were tired, and Mr. Walter Steed, one of the counsel for the defendant, stated that he could go on that night, but that on account of riding a hundred miles during the previous day and having to get [up?] early in the morning of May 19, 1925, and having to go through the trial that day, that he felt physically somewhat gant, but stated that he was not sick. And the said Steed then and there stated in his place that he thought the request was a reasonable request. The court overruled the motion of the said Beeland, and required three of the arguments to be made during the night after supper on the 19th of May, 1925." It will be observed that Mr. Steed did not state that he was sick, and no statement was made other than that the counsel were tired. No one of the counsel stated that his physical condition was such that he could not do justice to his clients, nor was any statement made that it would be injurious to the health of counsel to proceed with the trial. The assignment of error as made is without merit.

6. In the twelfth ground it is assigned as error that the court illegally admitted to the jury the following evidence: "We found a couple of suit-cases and a raincoat there, that is one of the suit-cases there, and the other one down in the office. I have a collar in my hand that I got out of Gervis's grip after we carried him to Columbus that night, just a little while after his arrest and the same night. The collar is bloody. That is not the only clothes I found with blood on them. I found his undershirt and his pants. Gervis had them bloody clothes on. They are there in the grip now, I'll get them out, there is his undershirt, blood on the shoul-

der and the tail of it. They come off of the defendant. There is his pants, or overalls; he had them on. I took that to be blood on them. I took these clothes off of Gervis Bloodworth. I am satisfied that is his coat we got off of him. I think, I am satisfied it is. I took all these clothes off of him after we got to Columbus, except the collar, that was in the grip; that was the same day we arrested him, on Wednesday. We got to Columbus something like ten and eleven o'clock. We disrobed him in the office of the jail. He said that was his grip that we got these things out of." It is insisted that the admission of this evidence was error, because the articles named in the testimony "were not produced in court at the trial, nor offered in evidence at the trial, . . and the State did not account for the absence of said articles or any of them." The excerpt from the brief of testimony taken and transcribed by the stenographer, which we have just quoted, is a portion of "the testimony of a witness for the State, Louis Beeland, given in Taylor superior court on the trial of the defendants and movants on a former trial, and the said witness Louis Beeland had died between the former trial and the beginning of the trial of the defendants in Muscogee superior court; and when the counsel for the State had read the evidence before the court and jury on the trial of the defendants in Muscogee superior court on direct examination and during the recall, counsel for movants then and there objected to said evidence quoted above," upon the ground that the articles referred to had not been produced or accounted for, as already stated. Counsel has not suggested, either in the motion for a new trial or in the briefs, how the omission of the physical objects referred to could have unlawfully affected the right of either of the defendants to an absolutely fair trial. It is true that counsel say that "the evidence was *prejudicial* [italics ours] to the case of the defendants; and had that evidence [the evidence quoted] not been permitted to go before the jury, the jury might have found a different verdict from the one returned." It might be conceded that the quoted evidence itself without the production of the physical objects might tend to lessen chances of a recommendation to mercy. But it does not appear from this, without more, that the actual production of these spirit-moving mementoes of the tragedy for the inspection of the triors (as Antony made profert of dead Cæsar's wounds before the Roman populace) would be beneficial

or even less "*prejudicial.*" The evidence in either event might be "*prejudicial.*" As a general rule, in the trial of cases it is not a question of whether evidence may or may not be prejudicial to either of the parties in the case, but rather whether the testimony is admissible *in the interest of the truth,* regardless -of the effect testimony or evidence may have upon the one litigant rather than the other. Justice should be so blind that she shall not see the parties and be influenced; but her hearing should be perfect, so that she will not only hear the whole truth, but also that her ear, trained in the melody of the truth, can.and will detect and reject falsehood as repugnant to her nature as well as discordant to truth's melody. We fail to see how it could have been harmful to one accused of murder to omit bloody clothing of his alleged victim or other articles, some of them bloodstained, which were found in the possession of the accused. If we could entertain this view, our holding would no doubt be different; because any circumstance or occurrence in the trial of one charged with crime, which may tend to deprive him in the slightest degree of his legal right to an absolutely .fair and impartial trial should, in my opinion, be most critically examined and analysed. If upon investigation it appears that any error of law in a trial caused or contributed to a result different from that which otherwise might lawfully have ensued, one accused of crime should have a new trial. However, as we think the omission of the physical objects was likely to have been beneficial to the accused, and as it was within their power to have produced these articles for themselves and presented them for the inspection of the jury, we have no alternative but to follow the ruling made in *City of Columbus* v. *Ogletree,* 102 *Ga.* 293, 294 (5), 297 (29 S. E. 749), in which it was said that "There was no error in admitting in evidence the testimony of a deceased witness, as embodied in an agreed brief of the evidence introduced at a former trial of the same case. This would not, however, prevent the opposite party from proving additionally other testimony given by this witness at that trial and not included in the brief." In that case it was held that the corrected brief of the evidence in the former trial, approved by the trial judge, was admissible although other testimony was given in addition to that contained in the brief; and Mr. Justice Cobb, in ruling upon the point, said: "The testimony of a witness who had been examined on the former

trial of the case, but who had since died, which had been embodied in the brief of the evidence filed with the motion for a new trial, and which was correct and approved by the judge, was admissible on the trial of the case. Civil Code [1895], § 5186; *Smith* v. *State, 28 Ga.* 19; *Adair* v. *Adair, 39 Ga.* 75; *Lathrop* v. *Adkisson, 87 Ga.* 339. If, however, it was shown that the witness had testified to other matters not embraced in the corrected brief, it would be allowable to show that such other testimony was given in addition to that contained in the brief." So in this case we think, for three reasons, the learned trial judge properly overruled the twelfth ground of the motion for a new trial: First, because the admission of the testimony, if for any reason it was not admissible, although the objects referred to were absent and not produced, could not be harmful to the accused. Second, the objection in the form as presented could not be sustained, because it was addressed to the portion of the evidence quoted in this ground of the motion, which was in part admissible, and an objection to certain evidence as an entirety is not good if any portion of the testimony objected to is admissible. Third, for the reason stated in the *Ogletree* case, to wit, that the defendants themselves could have had in court the physical objects, if they were still in existence, and could themselves have had them presented to the jury. See Penal Code (1910), § 1027; *Lathrop* v. *Adkisson, 87 Ga.* 339 (2) (13 S. E. 517). Nothing ruled in *Denson* v. *Denson,* 111 *Ga.* 809 (35 S. E. 680), conflicts with what is now held in this case; for all of the testimony of the witness Beeland, as it appeared in the agreed brief of evidence on the former trial, was read to the jury.

*Judgment affirmed. All the Justices concur.*